## SEAMAN *vs.* HOGEBOOM and others.

Where a deed describes a line as running from a known monument east a given number of feet, to a stake and stones, and there is no such monument there, at the execution of the conveyance, although there had been, formerly, in the original location of the lot, in running the line the grantee is to be governed by the next call in the deed, viz: the course and distance; and cannot resort to parol proof to show the monument as existing while the title was held by his grantors.

And if, on running out the land according to the courses and distances laid down in the deed, the lines of the survey will not close, so that, relying solely upon the courses and distances, to arrive at the intent of the parties, the conveyance is void for uncertainty, it is not an inflexible rule in construction that they are to control.

Under such circumstances, resort may be had to other particulars stated in the description of the premises, to ascertain what land the deed was intended to cover, and thus to uphold the grant.

Thus where, in addition to a description of the premises by fixed monuments and courses and distances, a deed purported to convey a lot of land " commonly called and distinguished as the Schermerhorn brick yard," *it was held*, that in the absence of any monuments, and the impossibility of ascertaining, from the courses and distances, what land was meant, the designation of the premises as " the Schermerhorn brick yard" determined what land was intended to be conveyed.

Where there are certain particulars in the description of the thing intended to be granted, which can be sufficiently ascertained, the addition of any mistaken or uncertain circumstance will not be allowed to frustrate the intention of the parties.

And if there be certain particulars sufficiently ascertained in the description to locate the land intended to be conveyed, the addition of any false or mistaken particulars may be rejected, or disregarded.

If by the words of a conveyance the grant may be ascertained and located, parol evidence for that purpose is unnecessary and inadmissible. It is only when it becomes necessary to ascertain the subject or object to which the instrument refers, or there is not enough in the description to locate it, or part of the description is false, that evidence *aliunde* is admissible.

As a general rule, when a deed describes land by course and distance, and also by known, visible monuments, the latter govern, and natural will overcome artificial monuments. Where no monuments exist, resort must be had to the next most certain call of the deed. This is, ordinarily, course and distance; but not invariably so.

If there are other more certain evidences of the intent of the parties, or if, by a resort to courses and distances exclusively, the result is to frustrate the grant,

whilst the description contains other matter to render the intent entirely certain, it is not an unbending rule that the call of course and distance in a deed must alone be resorted to in the absence of natural or artificial monuments or ground marks.

THIS action was brought to recover the possession of the undivided half of a lot of land, in the village of Castleton, commonly called and distinguished as the Schermerhorn brick yard. The answer put in issue the plaintiff's title, and alleged that he claimed title under a deed from John J. Kittle, dated January 16, 1844; that next south of and adjacent to the premises, and separated therefrom by the southerly boundary thereof, is situate a tract of land formerly owned by Isaac Esleeck, deceased, and now owned in fee by the defendant Nancy Stearns, and occupied by the defendant Hogeboom, as tenant at will; that the plaintiff claimed that the southerly boundary of the land described in the deed from Kittle, and in the complaint, so ran as to include a portion of the premises claimed and owned by Stearns and wife, and occupied by Hogeboom.

The reply affirms that the premises are correctly described in the complaint, and denies that the only title the plaintiff can make is under the Kittle deed. That the word "east" in said deed does not mean due east, but easterly, as set forth in the complaint. That the land described in the complaint and deed as the Schermerhorn brick yard, is a well known lot of land, and has been so for more than 20 years.

The cause was tried at the Rensselaer circuit in April, 1853. The plaintiff proved that on the 9th June, 1812, Isaac Esleeck conveyed to one George Noyes a lot in the village of Castleton, describing it as "beginning at the S. W. corner of the house now occupied by George Noyes aforesaid, and running east 157 feet to a stake and stones; from thence a northerly course 273 feet to a stake and stones; from thence west or westerly 154 feet to a stake and stones; thence 151 feet to the place of beginning." At the time of the purchase by Noyes from Esleeck, (who owned the land adjacent and directly south) there was no survey made of the lot conveyed. The lines were run by the

parties with a rope, and monuments fixed.   In May, 1817, John
J. and George Schermerhorn recovered a judgment in the su-
preme court against Noyes.   The lot was sold under an execu-
tion issued upon this judgment, and the Schermerhorns became
the purchasers, and in 1820 the premises were conveyed to them
by the sheriff.   In October, 1837, John J. Schermerhorn and
Cornelius Wilsey assigned to John J. Kittle all the lands in
the state owned by the grantors.   On the 16th January, 1844,
Kittle conveyed to the plaintiff the premises described as fol-
lows : " All and singular, that certain piece or parcel or lot of
land situated in the village of Castleton, and town aforesaid,
bounded as follows, beginning at the S. W. corner of the dwell-
ing house formerly occupied by George Noyes, running east 157
feet to a stake and stones; thence a northwardly course 273
feet to a stake and stones ; from thence west or westwardly 154
feet to a stake and stones ; from thence 151 feet to the place
of beginning, commonly called and distinguished as the Scher-
merhorn brick yard."   Noyes occupied the premises as a brick
yard, up to 1823.   Subsequently they were owned and occupied
by the Schermerhorns, and persons under them, as a brick
yard.   Noyes left Castleton in 1823.

The defendants, Stearns and wife, claimed to own the lands
adjoining the southerly boundary line of the plaintiff's lot.   The
defendant Hogeboom, some seven or eight years prior to the
trial, and about the time of the purchase of the premises by the
plaintiff from Kittle, erected a barn, under Stearns and wife, on
land claimed by the plaintiff to be included in the deed to him
from Kittle.   It was admitted that he was in possession of the
barn at the commencement of the suit.   The controversy in the
case was respecting the southern boundary line of the plaintiff's
lot.   The starting point called for in the deed from Esleeck to
Noyes in 1812, and from Kittle to the plaintiff in 1844, was a
dwelling house occupied by Noyes at the southwest corner of
the lot.   The first course in the deed was " east 157 feet to a
stake and stones."   This first monument had been removed
prior to 1823, and no traces left of it.   A due east line from

the starting point would run northerly of the barn and premises occupied by Hogeboom. The plaintiff gave evidence tending to show the location of the stake and stones, the first monument called for in the deed; that the plaintiff's premises were for more than twenty years prior to the conveyance to him, known and distinguished and commonly called " the Schermerhorn brick yard ;" that the lot as used and occupied by Noyes, and which in 1823 went into the possession and occupancy of the Schermerhorns, and was afterwards known and commonly called " the Schermerhorn brick yard," embraced and included in it the small strip of land on which the defendant Hogeboom had erected the barn. The defendant showed that a due east line, run as the first course called for in the deed of the plaintiff, would leave the barn and premises in possession of the defendants south of the southerly line of the plaintiff's lot; and they gave evidence tending to show that the land on which the barn was erected formed no part of the lot as used as a brick yard by Noyes, and the Schermerhorns, and those under them. By running the courses and distances as given in the deed, the lines of the survey would not close.

When the plaintiff rested, the defendants moved for a nonsuit, on the ground that the plaintiff was bound by the first course and distance mentioned in his deed from Kittle, and could not claim south of that line, it being shown that there was no stake and stones at the end of the first course intended as a monument, at the time of the execution of the deed; and that in the absence of a fixed monument the course and distance was the next certain call, and must control any words of common description. The court refused to nonsuit the plaintiff, and the defendants excepted. Further evidence was then given on the question of the extent and location of the plaintiff's lot, and in reference to the southerly line thereof. The testimony being closed, the case states that the defendants' counsel requested the court to decide the following points, and nonsuit the plaintiff : 1. That the plaintiff is bound by the first course and distance mentioned in his deed from John J. Kittle, and cannot

claim south of that line, it being proved that there was no stake and stone intended as a monument, at the time of the execution of the deed, and consequently, 2. All proof given to show where a stake and stone placed as a monument, stood previous to the execution of the deed, is incompetent and should be stricken out or disregarded. 3. The addition at the end of the description by courses and distances, of the words, "commonly called and distinguished as the Schermerhorn brick yard," cannot vary the construction of the deed or authorize proof as to what premises were intended to be included in the "Schermerhorn brick yard." The testimony admitted on that subject was incompetent and ought to be stricken out and disregarded. But the court refused to rule as requested, and to nonsuit the plaintiff; to which refusal and decision the defendants' counsel excepted. The court among other things, charged the jury that unless the description in the deed had been aided by the last clause, viz : the words "commonly called and distinguished as the Schermerhorn brick yard," it would have been void for uncertainty; the first call being for a line 157 feet east; thence northwardly 273 feet ; thence west or westwardly 154 feet, and from thence 151 feet to the place of beginning ; the second and third courses being run due north and west the lines of the survey would not close, and hence if it were not for the last clause the deed would be void. To which part of the charge the defendants' counsel excepted. The court further charged that the evidence in regard to the location of the stake and stones in 1812, was of importance as testimony to be considered in determining what were the premises usually known as "the Schermerhorn brick yard." To which part of the charge the defendants' counsel excepted.

The jury rendered a verdict for the plaintiff. The defendants moved for a new trial on a case.

*J. H. Reynolds,* for the plaintiff.

*W. A. Beach,* for the defendants.

Seaman *v.* Hogeboom.

*By the Court,* WRIGHT, J.   In 1844, one John J. Kittle granted to the plaintiff a lot of land, describing it as : " All and singular, that certain piece or parcel (or lot) of land, situated in the village of Castleton, and town of Schodack, and bounded as follows, viz : beginning at the southwest corner of the dwelling house formerly occupied by George Noyes, running east one hundred and fifty-seven feet to a stake and stones ; from thence a northwardly course two hundred and seventy-three feet to a stake and stones ; from thence west or westwardly one hundred and fifty-four feet to a stake and stones ; from thence one hundred and fifty-one feet to the place of beginning, commonly called and distinguished as the ' Schermerhorn brick yard.' " The only question on the trial respected the location of the lot. Had the stake and stones, described in the deed as being at the end of the first course, existed at the execution of the conveyance to the plaintiff, or had the deed described the line as running to where a stake and stones "*formerly* stood," it is conceded that no question could have arisen as to the location of the line, as the course and distance must have yielded to the monument, or ground mark ; and had the monument been removed subsequently to the execution of the deed, it would have made no difference, for the party would have been at liberty to prove by parol where the stake and stones stood at the time of the conveyance.   But, when the deed to the plaintiff was executed, there were no stake and stones at the easterly end of the first course, though they were put there when the lot was run out in 1812, and remained for some years afterwards.   In a case respecting this line it was decided at the June term of the court, in 1848, (it being admitted that the stake and stones had been removed several years before the deed from Kittle to the plaintiff was executed,) that the line could not be run to where the stake and stones formerly stood, but that the next call in the deed, viz : the course and distance, must govern ; that it was not a case of latent ambiguity in the deed, susceptible of parol explanation, and if it was the intention of the parties to run the line to where a stake and stones formerly stood, and the language used was the result of mistake, the only relief of the party

Seaman *v.* Hogeboom.

was in equity. (*Seaman* v. *Hogeboom & Harder, 3 Barb.* 215.) This case is decisive of the point, at least in this court, that where a deed describes a line as running from a known monument, east a given number of feet to a stake and stones, and there is no such monument there, at the execution of the convey- ance, although there had been formerly in the original location of the lot, in running the line the party is to be governed by the next call in the deed, viz : the course and distance, and cannot resort to parol proof to show the monument as existing while the title was held by his grantors. But the point is not decisive of the case as now presented. Other considerations enter now into the case, supposed to be controlling on the ques- tion of location. The starting point is the southwest corner of a dwelling house formerly occupied by one Noyes, the grantee of the lot, as early as 1812. The first course as described in the plaintiff's conveyance is, *east one hundred and fifty-seven feet to a stake and stones.* But there is no monument there, nor was there at the date of the deed. The next call in the conveyance is the course and distance. The course described is *east,* which, if there be no object in the deed to control, means due east. A due east line is run, which excludes the barn and premises in the possession of the defendants from the plaintiff's lot, but running the second and third courses according to the deed, the lines of the survey will not close. In the deed the first course is described as *east,* the second *northwardly,* and the third *west* or *westwardly.* It is admitted that where the courses in a grant are indicated by the terms "*northwardly*" or "*westwardly,*" they are to be run due north and due west. Running therefore due east, north and west lines, (the monu- ments to direct the inclination of the courses being gone, or not existing at the date of the conveyance,) the lines of the survey will not close. So, that relying solely upon the courses and distances as given in the deed to the plaintiff, to arrive at the intent of the parties, the conveyance would seem to be void for uncertainty ; a conclusion that we should by all means avoid if, upon the whole instrument, there is enough to indicate what the parties intended, with reasonable certainty. If the intent of the

parties, (says Chief Justice Willes,) be plain and clear, we ought if possible to put such construction on the doubtful words of a deed, as will best answer the intention of the parties, and reject that construction which manifestly tends to overturn and destroy it. (*Parkhurst* v. *Smith, Willes*, 332.) "I do exceedingly commend the judges," says Lord Hobart, "that are curious, and almost subtle, *astuti*, to invent reasons and means to make acts according to the just *intent* of the parties, and to avoid wrong and injury which by rigid rules might be wrought out of the act." (*Earl of Clanrickard's case, Hob.* 277.)

Courts are to so construe the words of a grant, if possible, as to give effect to it, if it be plain that the parties intended it should be an effective conveyance. In the construction the expressed will of the parties is to control. If this be plain upon the face of the instrument, courts are to go no further, though the words used frustrate the grant itself. Where the expression of the intent is doubtful and ambiguous, the most material and certain among the evidences of intent, are to be selected and accredited. That which is most material and most certain in a description shall control that which is less material and less certain. (*Doe* v. *Thompson*, 5 *Cowen.* 393. *Newcome* v. *Ryor*, 7 *Wheat.* 10.) If by the words of the instrument the grant may be ascertained and located, parol evidence for that purpose is unnecessary and inadmissible. It is only when it becomes necessary to ascertain the subject or object to which the instrument refers, or there is not enough in the description to locate it, or part of the description is false, that evidence *aliunde* is admissible. As a general rule, when a deed describes land by course and distance, and also by known visible monuments, the latter govern; and natural will overcome artificial monuments. Where no monuments exist resort must be had to the next most certain call of the deed. This is, ordinarily, course and distance; but not invariably so. If there are other more certain evidences of the intent of the parties, or if by a resort to courses and distances exclusively, the result is to frustrate the grant, whilst the description contains other matter to render the intent entirely certain, it is not an unbending rule that the

call of course and distance in a deed must alone be resorted to in the absence of natural or artificial monuments or ground marks. If the land may be located, and the intent ascertained by running the lines of the lot agreeably to the courses and distances given in the deed, other matter in the description less certain, of course should be rejected. But where the lot cannot be located by a resort to the call of course and distance, the intent of the parties is not to fail, if there be other matter in the instrument indicative and certain of such intent. Every word contained in the deed should be understood as designed to carry the intent into effect; but words, if necessary, may be supplied by intendment, and particular clauses and provisions qualified, transposed or rejected, in order to ascertain and give effect to the intention. Guided by these rules of construction let us look for a moment at the case in hand. It is not controverted that Kittle, by his deed to the plaintiff, intended to transfer to the grantee a valid title to some piece of land. He meant that the conveyance should be an effective one. The subject matter is .declared to be a village lot, and *all* of the piece or parcel. It is all that certain parcel or lot of land in the village of Castleton. The grant then fixes a starting point, and proceeds to bound the lot by courses and distances and artificial monuments, and concludes the description with the words " commonly called and distinguished as the Schermerhorn brick yard." It cannot be doubted that had the courses and distances been omitted and the description read simply, " all that certain lot of land in the village of Castleton commonly called and distinguished as the Schermerhorn brick yard," the grant would not have been void for uncertainty, but the subject matter have been capable of certain identification, and the grant applied by evidence *aliunde*. It would then unquestionably have been proper to do what was done in this case, viz : to show by parol proof the location of the piece of land called and distinguished as " the Schermerhorn brick yard." As where an estate granted is described generally as *Blackacre*, (4 *Adolph. & Ellis*, 81,) or as " *a tract of land called the Beaver dam*," (2 *Ham.* 32,) or " the corner house in Andover, in the tenure of B. & H." (*Cro. Car.* 447, 473,) and

the like.  But the grant assumed to give other evidences by which the subject matter might be identified.  A starting point, and courses and distances were defined, and artificial corner monuments given.  These monuments, had they existed at the date of the conveyance, would have been conclusive on the question of location; and would have been more certain evidences of intent than any other particular in the description. But so much of the description is shown, and by proof *aliunde,* to be false.  It cannot be relied on, therefore, as a circumstance to show the intent of the parties to the grant, and is to be put out of view.  The next particular in the description, ordinarily resorted to, is the course and distance.  If, according to the courses and distances described in the conveyance the subject matter may be certainly identified, and the lot located, these calls must govern.  We are not to resort to parol evidence if the lot can be certainly identified and located and the intent fully ascertained by the instrument itself.  But if the courses and distances as given, and as they are to be run, tend to render the grant void for uncertainty, or if they are less certain indications than other particulars contained in the grant, of the intent of the parties, it is not an inflexible rule in construction that they are to control.  A grant is not to be frustrated altogether, or the intention of the parties rendered less certain, by resorting in the construction of it to a mistaken and uncertain circumstance, if there be that in the description which can be sufficiently ascertained to render the intention entirely manifest and preserve the grant.  Resorting to the courses and distances as given in the plaintiff's deed, the lines of the survey will not close.  The deed describes a piece of land that cannot, in this way, be located.  We must vary the courses, else the thing granted is so uncertain that effect cannot be given to the grant. Ought we to do this, when there are other certain particulars in the description of the thing intended to be granted?  We think not.  No rules of construction are better settled than these, that when there are certain particulars in the description of the thing intended to be granted which can be sufficiently ascertained, the addition of any mistaken or uncertain circum-

stance will or ought not to frustrate the intention of the parties. And if there be certain particulars sufficiently ascertained in the description to locate the land intended to be conveyed, the addition of any false or mistaken particulars may be rejected or disregarded. (*Blague* v. *Gould, Cro. Car.* 447, 473. *Jackson* v. *Clark,* 7. *John.* 217. *Hathaway* v. *Power,* 6 *Hill,* 453. *Doe* v. *Thompson,* 5 *Cowen,* 373. *Wendell* v. *The People,* 8 *Wend.* 189.) In the absence of monuments to control, the courses as given in the plaintiff's deed were not the next most certain calls to be resorted to, to the exclusion of all other proof of location. These particulars of the description would render the location entirely uncertain, and instead of aiding, defeat the intention of the parties. There was that, however, in the description to uphold the grant and plainly indicate what land the deed was intended to cover. On its face it purported to convey that lot of land " commonly called and distinguished as the Schermerhorn brick yard." That designation aided any uncertainty or imperfection in the previous description. In the absence of the monument showing the location of the southeast corner of the lot, and the uncertainty created by running the lines as described, the next most material and certain indication in the deed is the designation of the Schermerhorn brick yard, and the lines and location of that lot being ascertained, determined the land intended to be conveyed by the deed.

On the trial, the principal proof was on the question of the location and extent of the lot of land commonly called "the Schermerhorn brick yard." This question of fact seemed to be almost the only controverted one. Evidence bearing upon the question was received without objection; and an examination of the case can leave no doubt that the defendant Hogeboom's barn was erected on what for a great number of years had been designated as the Schermerhorn brick yard lot. The piece of land had been located as a brick yard for over thirty years prior to the deed to the plaintiff, and had been owned and actually possessed by the Schermerhorns and their assignee for more than twenty years of that time. At the conclusion of the trial, the judge refused to nonsuit the plaintiff, and strike out the evi-

dence that had been given without objection to show where the monument described as being at the end of the first course stood previous to the execution of the deed, and, also, as to the location and extent of the lot called " the Schermerhorn brick yard ;" and among other things charged the jury that if it were not for the last clause in the deed, viz. the words " commonly called and distinguished as the Schermerhorn brick yard," (as running the courses given the lines of the survey would not close,) it would have been void for uncertainty, and that evidence in regard to the location of the stake and stones in 1812 was of importance as testimony to be considered in determining what were the premises usually known as " the Schermerhorn brick yard." We think there was no error in the refusal to nonsuit, or in the charge.

[ALBANY GENERAL TERM, September 3, 1855. *Parker, Harris* and *Wright,* Justices.]