(89 App. Div. 475.)

### SMITH et al. v. TRUSTEES OF FREEHOLDERS & COMMONALTY OF TOWN OF BROOKHAVEN et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. DEEDS—DESCRIPTION—CONSTRUCTION.

The unpunctuated description in a deed was: "All that tract of meadow lying on the east side of a certain house near a place called C. about a mile and a half from the gut near the place called the green pines." *Held* that, C. being also known as "C. Gut," and there being no other gut near there, it will be construed as locating the house one and a half miles from the C. gut; this construction locating the house as in the later deeds in the chain of title, and without it no purpose being served by the words "about a mile and a half from the gut."

2. SAME—PAROL EVIDENCE.

The location of a lost ancient monument being ascertainable from the description in a deed, evidence of reputation as to its location is not admissible.

Appeal from Special Term, Suffolk County.

Action by William E. T. Smith and others against the trustees of the freeholders and commonalty of the town of Brookhaven, John S. Havens, and others. From a judgment for defendants on the report of a referee, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Clarence G. T. Smith (Everett H. Osborn, on the brief), for appellants.

Timothy M. Griffing and Robert S. Pelletreau, for respondents.

HOOKER, J. The decision in this case hinges on the location of Bailey's Stage. This is conceded to be its only issue. If that structure, during its existence, stood on or adjacent to the western bounds of the town of Southampton, on the Great South Beach, instead of about a mile or mile and a half west thereof, as the plaintiffs claim, the defendants must succeed in this action of ejectment. In the latter part of the seventeenth century Col. William Smith obtained Indian deeds and patents of the locus in quo and adjoining property. It appears from some of the deeds in evidence that there stood in the neighborhood "a certain house which Stephen Baily & Company used when they went a whaling," and this house, called in some of the more recent conveyances "Bailey's Stage," was treated as a landmark or monument in fixing the boundaries in many of the several deeds which form the plaintiffs' chain of title, and in many of the deeds by which neighboring property on the east and west had been, prior to the commencement of the last century, described. Bailey's Stage has long since passed totally out of existence, and the memory of no living witness extends far enough back to locate its ruins, or the place

where it stood.  The defendants, presumably on the theory that in the written instruments there was ambiguity as to its location, sought to show a tradition in regard thereto, and asked of one of their witnesses, who had said that he had heard of a tradition in regard to the location of Bailey's Stage at least 60 years before the trial, whether he knew of a tradition in regard to Bailey's Stage with reference to the location or in connection with the western boundary of the town of Southampton.  This was objected to as incompetent, immaterial, as hearsay, and as tending to vary the terms of a written instrument. The learned referee overruled the objection, and the plaintiffs duly excepted.  The witness answered that older people living there. had stated that Bailey's Stage and the Southampton town line were identical, or that Bailey's Stage was located near the Southampton town line.  Another witness was allowed to testify, under the same objection and exception, that he had heard it spoken of as a boy; that the old people located Bailey's Stage at the end of the cedars near the Great Hill, and that he had never heard of any other location for Bailey's Stage.  It appeared that the Great Hill was on or near the Southampton town line.

It is evident that the referee intended to follow the rule quoted by Greenleaf in his work on Evidence (volume 1, § 145):

"Accordingly, though evidence of reputation is received in regard to the boundaries of parishes, manors, and the like, which are of public interest, and generally of remote antiquity, yet by the weight of authority and upon better reason such evidence is held to be inadmissible for the purpose of proving the boundary of a private estate, when such boundary is not identical with another of a public or quasi public nature.  Where the question is of such general nature, whether it be of boundary or of right of common by custom, or the like, evidence of reputation is admitted only under the qualifications already stated, requiring competent knowledge in the declarants or persons from whom the information is derived, and that they be persons free from particular and direct interest at the time, and are since deceased."

That this rule was not applicable for the reason, to be discussed hereafter, that hearsay evidence of reputation and tradition is not admissible where there is sufficient in the documents to mark the location of boundaries without its aid, and that there was sufficient in the deeds we find in the record, is, we think, clear.  On the 22d day of July, 1768, the owners of all the meadow on the Great South Beach from Bailey's Stage to the westerly side of Reeves' Point entered into a partition agreement and deed, by which there was set off to each of the owners certain parts of the property which had been held in common.  This deed was received without objection.  Division was made therein by reciting the act of the surveyors to whom was referred the matter of allotment, and the description of that portion laid out at the most eastern portion of the lands treated by the deed is described by reciting what the referees had done, as follows:

"Then they laid at the east end of the tract of meadow next to Bailey Stage a lot for John Tuthill, containing about four acres being 25 rods wide next the bech to jaw bone of a whale marked on the east side J. T. on the west J. S. the course between sd. lots is north 15 degrees west, then they laid all the meadow between sd. John Tuthill & sd. Matthew Smith, together with Reeve's Island for the part of Cpt. Josiah Smith."

This instrument seems to indicate that Bailey's Stage was located 25 rods east of the west line of the plot set off to John Tuthill, held and owned at present by George Franklin Tuthill, who now has the easternmost piece of the meadow, which has come down by inheritance and grant from John Tuthill. There appears to be no dispute as to the present exact location of the line from which this measurement of 25 rods was made. William Smith, the grandson of the original grantee and patentee, made an important disposition of the premises in question which adjoins the East Bay, the deed being part of the chain of title upon which the claim is made. In 1790, by warranty deed, he conveyed "all that certain Beach and Meadow in the Manor and in the County aforesaid, extending Easterly from a certain place called and known by the name of Bayles' Stage (which is in about a South direction from a certain Neck or point of Land called Moriches, at present owned by Oliver Smith), to the Western bounds of the Southampton patent Line aforesaid." The determination of the location of Bailey's Stage, gathered from this instrument as being in about a south direction from a "certain neck or point of land called Moriches," is very nearly coincident with the location determined by the partition deed of 1768. Although there is more than one "neck or point of land" called Moriches at the present time, the proofs taken, we think, are quite sufficient to point very strongly to the intention of the grantor in the deed of 1790 to speak of the eastern Moriches.

Had there been no other deeds which, at first notice, seem to dispute the determination of the location of Bailey's Stage, as indicated in those we have mentioned, it does not seem likely that the referee would have admitted evidence of tradition for the purpose of ascertaining its location. The defendants rely particularly upon the deed of William Smith, the patentee, dated June 14, 1693, as fixing Bailey's Stage adjacent to the Southampton town line, and evidently admitted the evidence of tradition for the purpose of expelling, if possible, the doubt raised in relation thereto by what appeared contradictory statements in regard to the place where this house formerly stood.

This deed purports to have been executed on the 14th day of June, 1693, and conveyed to the trustees of the freeholders of the commonalty of the town of Southampton all that "tract of medow on ye north side of ye South beach situate lying and being on ye East side of a certain house which Stephen Bayly & company used when they went a whaling near to a place called Copsowogue about a mile and a half from ye gut near ye place called ye green pines. To have and to hold ye said medow with convenience of making yards to set up hay to ye use of ye said Trustees of ye freeholders & commonalty of ye town of Southampton and their heirs and sucksesors forever.", The defendants hold that this deed, the oldest in which this whaling station of Stephen Bayley is mentioned, locates the stage at or near Copsowogue; and, inasmuch as there is abundant proof, and no apparent denial, of the fact that Copsowogue was in or near the Southampton west line, they claim that it is demonstrated by this instrument of extreme antiquity that the landmark in question was at the Southampton bounds. A close inspection of the description which we have

quoted leads to the consideration that the deed falls short of substantiating defendants' claim in this respect. This doubt is raised partially by the total absence of any punctuation in the description and by the use of the word "gut" unaccompanied by any words of modification or description. There is no evidence, either record or verbal, of any place known now or heretofore as a "gut" located about a mile and one-half from the Southampton west town line, except Copsowogue itself, which is described as "Copsowogue" or "Cupsogue Gut" with great frequency in the deeds and other records introduced by both parties. We think that no contortion of the instrument is effected, therefore, to read the words "Copsowogue" and "gut," contained in this description, as meaning "Cupsowogue Gut," especially as the reading of the description upon this basis will conform the location of Bailey's Stage very closely to the place where it was evidently understood to be by later grantors. With proper punctuation, adopting this reading, the description will go as follows: "All that tract of meadow  *  *  *  situate, lying and being on the east side of a certain house,  *  *  *  near to a place called Copsowogue—about a mile and one-half from the gut—near the place called the Green Pines;" or, to make the apposition between the words "Copsowogue" and "Gut" more distinct, this interpretation leads to the reading: "East side of a certain house,  *  *  *  near to a place called Copsowogue, about a mile and one-half from it (or therefrom), near the place called the Green Pines." Supplying this punctuation, and reading the description thus, gives effect not only to the description itself, but to the later deeds. Without it the words "about a mile and one-half from the gut" seem to serve no purpose in the description. It is a familiar rule that the construction should be indulged which gives effect to the whole instrument. In case of ambiguity in descriptions of deeds or in the location of boundaries, they should be read to conform one with another, where that can be done without giving a violent meaning or construction to a particular description. See Higinbotham v. Stoddard, 72 N. Y. 94; Buffalo, N. Y. & E. R. R. Co. v. Stigeler, 61 N. Y. 348; Ayers v. Watson, 132 U. S. 394, 10 Sup. Ct. 116, 33 L. Ed. 378; Frier v. Jackson, 8 Johns. 495.

With this deed of 1693 construed in this manner, there is no violent discrepancy in the instruments or records appearing in the printed book in reference to the location of Bailey's Stage, and we think that the ruling of the referee, admitting parol evidence of tradition or reputation as to the place where that landmark stood, was error under the rule that a deed cannot be contradicted or explained by parol evidence. It was said by Judge Allen, speaking for the Court of Appeals in Drew v. Swift, 46 N. Y. 204, 209:

"Where there are no monuments, or if monuments once existing are gone, and the place where they originally stood cannot be ascertained, the courses and distances, when explicit, must govern, and cannot be controlled or affected by parol evidence. Linscott v. Fernald, 5 Greenl. 496; Bell v. Morse, 6 N. H. 205; Van Wyck v. Wright (18 Wend. 157); Clark v. Baird, 9 N. Y. 183; Clark v. Wethey, 19 Wend. 320."

It was held in Seaman v. Hogeboom, 21 Barb. 398, that parol evidence is unnecessary and inadmissible to ascertain the locus, where

the words of the conveyance are sufficient, and that evidence aliunde cannot be resorted to except in case there is not sufficient description to locate it, or part of the description is false. While it may be proper to prove ancient reputation for the purpose of establishing boundary lines, and especially where monuments and landmarks have ceased to exist, as pointed out by Greenleaf (Greenleaf on Evidence, vol. 1, § 145), as has been held by the late General Term of the Fifth Department, Mr. Justice Barker speaking for the court (Partridge v. Russell, 50 Hun, 601, 2 N. Y. Supp. 529), and as perhaps indicated by a sentence in the opinion of Judge Maynard in Donohue v. Whitney, 133 N. Y. 178, 186, 30 N. E. 848, this is not a case where the reception of such evidence is proper. While it is true Bailey's Stage has long since passed into oblivion, and no one has any personal knowledge of where it stood, the declarations in the deeds in evidence, all of which are upwards of 100 years old, must be relied upon to tell the story of the lost landmark with that degree of faithfulness which will not permit an impeachment by the evidence of those who heard old people tell where Bailey's Stage stood, especially in view of the fact that those "old people" do not seem to have had any personal knowledge themselves upon the subject of its location.

The judgment should be reversed, therefore, and a new trial granted.

Judgment reversed, and new trial granted before another referee, to be appointed at Special Term; costs to abide the event. All concur.