ROBERT DREW, Respondent, v. JULIUS S. SWIFT, Appellant.

Permanent and visible monuments, referred to in a deed, will control courses, distances, and quantity; but when the monument called for is not found, nor its location or existence proven, the lands must be located by the other parts of the description. And where the grant describes the premises by definite and distinct boundaries, from which the lands conveyed may be located, no extrinsic facts or parol evidence of intent can be resorted to, to control or vary the description.

In an action of ejectment against a grantee, holding under a deed which under the above rules gave him title to the *locus in quo*,—*Held*, that plaintiff was not entitled to recover upon proof of prior possession, other than an adverse possession for a period which would bar an entry, and that the admission of evidence of the statements and declarations of defendant, tending to vary the description was error.

(Argued February 10th, 1871; decided September 2d, 1871.)

APPEAL from judgment entered in Erie county upon order of the late General Term of the eighth judicial district, denying motion for new trial, and directing judgment upon verdict in favor of plaintiff.

This is an action of ejectment, brought to recover possession of certain lands situated in the town of Newstead, Erie county. The facts appearing upon the trial are sufficiently stated in the opinion. A verdict was rendered by the jury in favor of the plaintiff for part of the land claimed. Exceptions were directed to be heard at first instance at General Term.

*L. L. Lewis*, for respondent. That in construing a deed the intent of the parties must be considered. (8 How. U. S., 274; 3 Mass., 352.) Where one having title locates a line which is acquiesced in for a considerable length of time, it will not be disturbed. (*Rockwell* v. *Adams*, 7 Cow., 761; *Jackson* v. *Van Coslier*, 11 Johns., 123; *Jackson* v. *McConnell*, 12 Wend., 422; 3 Keyes, 513.) Defendant being a mere trespasser, plaintiff can maintain ejectment, even if he has no title. (2 Johns., 22; 4 id., 202; 10 id., 338; 16 id.,

325; 1 Cow., 613; 5 id., 202; 7 id., 637; 15 Wend., 171; 31 Barb., 511; 5 Duer, 130; 9 How., 232.)

*William Dorsheimer,* for appellant. That parol testimony to vary the effect of the deeds was improper. (*Van Wyck* v. *Wright,* 18 Wend., 157; *Linscott* v. *Fernald,* 5 Greenl., 496; *Bell* v. *Morse,* 6 N. H., 205; *Seaman* v. *Hogeboom,* 21 Barb., 598; *Clark* v. *Baird,* 5 Seld., 193.) Courses and distances control in a deed, calling for a monument which did not exist at the time deed was made. (*Seaman* v. *Hogeboom,* 3 Barb., 215; S. C., 21 id., 298; *Cudney* v. *Early,* 4 Paige, 209.) The court erred in charging, that plaintiff could recover without title by adverse possession or otherwise. (*Jackson* v. *Hazen,* 2 Johns., 22; *Jackson* v. *Hardee,* 4 id., 202; *Smith* v. *Lorillard,* 10 id., 338; *Jackson* v. *Camp,* 1 Cow., 605; *Jackson* v. *Walker,* 7 id., 637; *Schauber* v. *Jackson,* 2 Wend., 13; *Jackson* v. *Russell & Rowland,* 6 id., 666.) Defendant or his grantor had title; and defendant, entering with his grantor's consent, can set up the outstanding title. (*Jackson* v. *Seelye,* 16 Johns., 197; *Jackson* v. *Farmer,* 9 Wend., 201.)

ALLEN, J. It is agreed that the title to part of lot No. 34, in township No. 13, fifth range in the town of Newstead, Erie county, including the premises in controversy, was at one time, in one Heman Stone; and it was held, upon the trial, that it was still in him, unless he had conveyed it to the defendant. In October, 1849, Stone conveyed to the defendant a part of the lands then owned by him, described by metes and bounds; and the material question upon the trial was, whether the *locus in quo* was within the description. The plaintiff and defendant own lands adjoining the narrow strip in dispute; the defendant acquiring title under the deed from Stone, and both holding under and recognizing a common source of title. The plaintiff relied upon possession of the disputed territory, giving no proof of a conveyance from the original proprietor, or of any paper title; and he recovered upon the strength of such possession. The defence, so

far as it depended upon title, hinged upon the question of boundary. The plaintiff did not make title by adverse possession. At the time of the conveyance by Stone to the defendant, there was no survey or map made of the premises, and there is no reference in the description to any map or survey, except the original survey of the township into lots by the Holland Land Company, the original proprietors. About ten years before the conveyance to the defendant, and about the time Stone took title, and for his own convenience, he had caused a survey of his premises to be made, and his boundary lines to be run by one Trowbridge; but it did not appear that any sale or conveyance, of any part of the lands, was ever based upon such survey, or that it was in any way referred to, in any deed or grant of any portion of the lands surveyed.

The lands that Stone owned, and a part of which he conveyed to the defendant, were in the center and western part of lot 34, extending from the western boundary of the lot, easterly to the line of the lands now owned by the plaintiff, who is bounded on the east by the Tonawanda reservation, the eastern boundary of the lot. The deed to the defendant described the premises conveyed, as beginning at a point on the north line of Stone's (the grantor's) land, twenty-five chains seven links west of the east line of lot 34; running thence east seventy-five links to a post, on the east bank of the grist and saw-mill race; thence south twenty-eight degrees west nine chains thirty-three links; and prescribing courses and distances thence upon several lines to the place of beginning, and containing two acres and 102 rods of land, be same more or less. The post at the termination of the first line or corner, is the only monument referred to in the description, and that was the north-eastern corner of the granted premises, and twenty-four chains and thirty-two links from the east line of the lot, the plaintiff's eastern boundary. The question upon the trial as said by Judge MARVIN was, " where was the north-east corner of the two acres and 102 rods conveyed by Stone by the deed of October 4th, 1849 ?"

The location of the corner being ascertained, the lines of the
grant could easily be traced by a surveyor with chain and
compass.  The post, if it had ever existed, had disappeared
before the trial, and its location was not shown.  This monu-
ment, if in existence when the conveyance was made, had it
remained, or its actual location been proved, would have been
decisive, as it would have controlled courses, distances, and
quantity.  A conveyance is to be construed in reference
to its visible locative, calls, as marked or appearing upon
the land, in preference to quantity, course, distance, map, or
anything else, as they are more material and certain in their
character.  (*Van Wyck* v. *Wright*, 18 W. R., 157; *Loomis*
v. *Jackson*, 19 J. R., 449; *Doe* v. *Thompson*, 5 Cow., 371.)
The permanent and visible monument called for by the deed,
as the location of the corner not being found, or its location,
or even its existence proved, the deed should have been con-
strued and effect given to it, in obedience to the other calls,
and the lands located by the other parts of the description.
There does not appear to have been any controversy in respect
of the northern line of the lands conveyed; and the eastern
line of lot 34 was, so far as appears, well established and
agreed upon; and with these lines given, it was a very simple
process to ascertain a point on the former, twenty-four chains
and thirty-two links distant from the latter.  This would have
given the north-east corner of the defendant's land, and the
place where the post should have been, to answer the descrip-
tion of such post, if such post ever existed, and in the absence
of proof of the existence of a post, answering the call at any other
point, must be taken as the true corner.  The same result would
be reached by running the line twenty-five chains, seven links
from the east line of the lot, to a point on Stone's north line,
which is the starting point in the deed, and running thence
as directed, east seventy-five links to the same point.  Other
trials seem to have settled every other question; and the par-
ties are said, in the judgment of the Supreme Court, to have
acquiesced in the construction theretofore given by the court,
to the several deeds, and the mode for ascertaining the east

line of the Lawler lot, a part of the land owned by Stone, and by which the title to the narrow strip of land in question, had been adjudged to be in Stone. It was so ruled upon this trial, and is not controverted upon this appeal. It follows therefore, as suggested by the judge at the trial, that the question was, whether Stone had conveyed to the defendant. That must be determined by the deed. The grant describing the premises by definite and distinct boundaries, from which the lands conveyed may be located, must be followed and effect given to it according to its calls. The evidence establishes very clearly, that lines run, as directed, from the corner ascertained by actual measurement, and located at the prescribed distance from the eastern line of the lot, and of plaintiff's land as called for by the deed, will include the premises in controversy. This being so, the title to the *locus in quo* was in the defendant, and he was entitled to a verdict, and to retain the lands as within the boundaries of his grant. The defendant was not a trespasser, but went into possession having title, and the plaintiff was not therefore entitled to recover, upon proof of any prior possession, other than an adverse possession for a period which would bar an entry, and no such possession was shown. The defendant was entitled to a judgment upon the merits. There was also error in the admission of evidence.

Evidence was admitted upon the trial, of the admissions and statements of the defendant, as to the lines and boundaries of the divisions of the lot, and especially as to the lines of the Trowbridge survey, and the jury were charged that the evidence might be considered by them, for the purpose of fixing the line as laid down by Trowbridge. The grant to the defendant was not made in reference to that survey or the lines then laid down, but was made by clear and distinct descriptive boundaries, and assuming as we must that Stone was the owner of the premises, the description was not aided, and there was no ambiguity which could be remedied by reference to that survey. The declarations of the defendant, or other parol evidence, could not be resorted to, to vary the

terms or aid in the interpretation of the deed. There was no ambiguity in the langage of the instrument. The description begins at a point capable of being ascertained, and runs thence by courses and distances well defined; and no extrinsic evidence, tending to explain the intention of the parties, and thus give effect to the deed different from its terms, was allowable. A deed cannot be contradicted, varied or explained by parol evidence. Where there are no monuments, or if monuments once existing are gone, and the place where they originally stood cannot be ascertained, the courses and distances, when explicit, must govern, and cannot be controlled or affected by parol evidence. (*Linscott* v. *Fernald*, 5 Greenl., 496; *Bell* v. *Morse*, 6 N. H., 205; *Van Wyck* v. *Wright*, *supra*; *Clark* v. *Baird*, 5 Seld., 183; *Clark* v. *Wethy*, 19 Wend., 320.) It is distinctly declared in the cases cited, and others that might be referred to, that upon principle, when the description in the deed designates a piece of land as that conveyed, the description cannot be departed from, by parol evidence of intent, or of acquiescence in another boundary, unless such an adverse possession be shown as is, in itself, a bar to an action. (*Adams* v. *Rockwell*, 16 Wend., 285.) The evidence was admitted, and submitted to the jury, as relevant and competent; and it cannot be assumed that it did not influence the result. It brought to the minds and consideration of the jury, as relevant to the main issue, and as an aid in ascertaining the land conveyed, which was adequately described in the deed, extrinsic facts and circumstances not admissible within the well established rules of evidence. It is true that the declarations had respect to the line laid down by Trowbridge; but the jury were given to understand, that that line was material in determining the boundaries of the grant to the defendant. This like every other extrinsic fact, was inadmissible to control or vary the descriptions in the deed. It cannot be said that the evidence, and the instructions based upon it, were certainly innoxious. It would rather seem that they must have influenced the verdict. The admission of the evidence, and its submission to the jury, as proper

to be considered in determining the question submitted to them, was erroneous; and the judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.