ABRAHAM ROBINSON et al., Executors, etc., Respondents, *v.*
BENJAMIN KIME, Appellant.

The felling of trees for the purpose of sale by a tenant for life, to the
injury of the reversioner, is waste, and an action lies by the latter imme-
diately to recover damages for the injury to the freehold.

It is not a defense to such an action that the tenant acted in good faith,
or under a claim of right, or that he was in possession, claiming title in
fee to the land upon which the waste was committed.

As the reversioner cannot bring trespass or ejectment against the tenant
so long as the tenancy continues, he is not debarred from his remedy
for waste, because the proceeding may involve the determination of a
disputed title.

Defendant went into possession of certain lands in 1838, under an oral
arrangement with his father, and occupied on the west up to a fence.
In 1841, his father conveyed to him by deed, describing the premises
conveyed by metes and bounds, which it was claimed did not give title
up to the fence. No part of the purchase money was paid until the
delivery of the deed. In 1858, defendant, as executor of his father,
contracted to sell to plaintiff's testator, R., lands bounded on the east
by defendant's land. It was stated in the contract that the line fence
between the two parcels of land did not stand on the line. In 1859,
defendant conveyed, pursuant to the contract, by deed, containing cov-
enants of warranty of title by him, both as executor and individually.
*Held,* that defendant could not claim, by adverse possession, the land,
if any, between his true west line and the fence; that he could not hold
adversely prior to obtaining his deed in 1841, and, if his possession was
adverse after that time, the adverse possession terminated upon his
conveyance to R., and he could not claim thereafter to hold in hostility
to his deed.

A conveyance is to be construed, in reference to its visible location calls,
as marked or appearing upon the land, in preference to quantity,
course or distance; and any particular may be rejected, if inconsistent
with the other parts of the description, and sufficient remains to locate
the land intended to be conveyed.

Where monuments existing at the time of a conveyance are referred to
therein, which have since disappeared, parol evidence of their location
is competent.

The right to recover treble damages in actions corresponding with the old
action of waste still exists under the Code.

(Argued May 31, 1877; decided June 12, 1877.)

APPEAL from judgment of the General Term of the
Supreme Court, in the fourth judicial department, affirming
a judgment in favor of plaintiff, entered upon a verdict.

This was an action for waste. It was originally brought by Simeon B. Robinson, plaintiff's testator, who died after judgment.

The premises in question were part of lot twenty-three, in the town of Fayette, Seneca county.

The facts, so far as material to the questions discussed, appear sufficiently in the opinion.

*E. G. Lapham*, for the appellant. An action for waste cannot be maintained against defendant. (2 R. S., 336, § 18; id., 338, §§ 1, 2; *Owen* v. *Davidson*, 4 Barb., 109; *Storm* v. *Mann*, 4 J. Ch., 21.) It was error to allow plaintiff treble damages for what was claimed as an excess of fire-wood used by the tenants. (7 Pick., 152; 20 Mass., 303; 15 id., 164; 6 Barb., 9; 26 id., 409; Wil. Eq., 371; *McCay* v. *Waite*, 57 Barb., 225.)

*S. R. Ten Eyck*, for the respondents. Defendant had not acquired title to the land in dispute by an adverse possession under a claim of title. (2 R. S.. 294, § 9; Code, §§ 82, 84; *Jackson* v. *Jackson*, 5 Cow., 74, 92; *Stevens* v. *Rhinelander*, 5 Robt., 311; *Humbert* v. *Trinity Church*, 24 Wend., 585; *Flora* v. *Carbeau*, 38 N. Y., 111; *Parker* v. *Foote*,, 29 Wend., 313; *Colvin* v. *Bennett*, 17 N. Y., 564, 568; Gerard's Titles to Real Estate, 637–643; *Jamison* v. *Cowell*, 5 N. Y. S. C., 628; *Luce* v. *Carley*, 24 Wend., 450; *Howard* v. *Howard*, 17 Barb., 663; *Wilklow* v. *Lane*, 37 id., 250; *Corning* v. *Troy*, 34 id., 485; *Jackson* v. *Burton*, 1 Wend., 341; *Swart* v. *Sevier*, 21 id., 36; *Jackson* v. *Bard*, 4 J. R., 230; *Jackson* v. *Camp*, 1 Cow., 605; *Jackson* v. *Johnson*, 5 id., 74; *Briggs* v. *Power*, 14 Wend., 227; 2 N. Y., 254; 4 Keyes, 448; 1 Seld., 394.)

ANDREWS, J. The defendant, at the time of committing the several acts of waste specified in the report of the referee, was the grantee of the life estate of Elizabeth Kime, in the lands on lot 23, admeasured and set apart as and for her

dower, out of the lands on said lot, of which her husband was seized at the time of his death in 1853.

The original plaintiff, by a deed from the defendant, as executor of his father, Christian Kime, dated April 11, 1859, containing covenants of warranty of title by the defendant as executor and individually, executed by virtue of a power contained in the will of Christian Kime, and in pursuance of a contract made between the executor and the plaintiff June 30, 1858, acquired title to the lands on lot 23, owned by Christian Kime at his death, bounded and described in the deed as follows:   " West, by Seneca lake; north, by lands of John Kime and Jacob Kime; and east by Benjamin Kime's land; and south by lands of Ed. B. Halsey and Vincent Halsey, containing one hundred and forty acres and fifteen hundredths, be the same more or less," subject to the life estate of Elizabeth Kime, in fifty-four acres on the east end of the premises, being the part thereof set apart and assigned to her for her dower therein.

In 1838, Christian Kime, in addition to the lands on lot 23, of which he died seized, owned other lands on the lot adjoining them on the east, and also a part of lot 18, north of and adjoining lot 23, and by a deed dated November 1, 1838, acknowledged February 8, 1841, and recorded October 16, 1841, conveyed to his son, John Kime, part of his land on lot 18, containing one hundred and fifty-six acres, and by another deed dated, acknowledged and recorded on the same day, conveyed to the defendant, Benjamin Kime, parts of lots 18 and 23, described therein as follows:   " Beginning at a stone in the road on the north line of said lot, number 23, and at the north-west corner of said part of said lot, number 23, occupied by Peter Van Riper; thence on said north line north eighty-nine and a half degrees west, *twenty-six chains and fifty-six links* to a stake; thence on J. Johnson's boundaries:   1st. North one and a half degrees east, fifteen chains thirty-two links to a stake.   2d. North eighty-nine and a half degrees west, eight chains to a stake.   3d. North seven and a half degrees east, thirteen chains and three links to a

stake.    4th.  North eighty-nine degrees west, five chains and twenty-four links to a stake; thence south two degrees west, twenty-eight chains and twenty links to a stake in a line between said lots; thence on said line south eighty-nine degrees east, three chains and twenty links to a stake; thence south forty chains and sixty-eight links to a stake in the south line of said lot number 23; thence on said line north eighty-nine and five-sixths degrees east, twenty-nine chains and thirty-eight links to a stake at P. Van Riper's south-west corner; thence on his line north half a degree east, forty chains and fifty-six links to the place of beginning, containing one hundred and forty-four acres and thirty-four hundredths of an acre of land."

The wife of Christian Kime did not join in these deeds, and in 1855 the widow procured her dower to be admeasured in the lands conveyed to John and Benjamin Kime, and her dower in the lands of Benjamin Kime was assigned to her in the south-west portion thereof, adjoining the dower lands assigned to her at or about the same time, in the lands of which her husband died seized, afterwards conveyed to the plaintiff.  The plaintiff, by his deed from the defendant as executor of Christian Kime, acquired the reversion in the part of lot 23, embraced in that conveyance assigned for dower to Elizabeth Kime, and a fee in possession in the remainder, and the defendant as the grantee of the tenant in dower, was liable to the grantee of the reversion for waste suffered or committed by him during the term on the dower lands, after the reversioner had acquired his title.  (2 R. S., 334, § 1.)    The referee found that certain acts of waste were committed by the defendant on the lands conveyed to the plaintiff, which are specified in his report, and no question now arises in respect to them, except as to the act of the defendant in cutting and selling two black walnut trees on lot 23, which the plaintiff claimed stood a few feet west of the east line of the land conveyed to him, and which the defendant insisted were upon the land deeded to him by his father, by the deed of November 1, 1838, and four or five

rods east of his west line.  It is admitted that the walnut tree stood on the dower lands, and also that they were west of the west line of the defendant's land, as that line was ascertained and defined by the commissioners in the proceedings for admeasuring the dower of Elizabeth Kime.  But the defendant contends that the true line between him and the plaintiff is west of the place where the commissioners located it, and where the walnut trees cut by him stood, and that he is not concluded by the line fixed by the commissioners, and while we deem it unnecessary to consider this question, we are of opinion that the defendant is not estopped by the action of the commissioners, or by the proceedings in the admeasurement of dower, from showing, in this action, the true boundaries of his land.  The referee found that the north and south line between the lands of the plaintiff and defendant is east of the place where the trees were cut, and this finding, if sustained by evidence, is conclusive of the right of the plaintiff to recover in this action.  The felling of timber trees by a tenant for the purpose of sale, to the injury of the reversioner, is waste, and an action lies by the reversioner immediately to recover the damages to the freehold.  (*Livingston* v. *Reynolds*, 26 Wend., 115; *Mc Gregor* v. *Brown*, 10 N. Y., 114; Addison on Torts, 228.) Nor is it any defence to the action that the tenant acted in good faith, or under a claim of right, or that he was in possession claiming title in fee to the land upon which the waste was committed.  The reversioner cannot bring trespass or ejectment against the tenant so long as the tenancy continues, and he is not debarred from his remedy at law or in equity for waste, because the proceeding may involve the determination of a disputed title.  (*Livingston* v. *Haywood*, 11 Jo., 429; *Livingston* v. *Mott*, 2 Wend., 605; *Clark* v. *Holden*, 7 Gray, 8; *Agate* v. *Lowenbein*, 57 N. Y., 614.)  The real controversy in this case turned upon the true location of the west line of the defendant's land, which was coincident with the plaintiff's east line.

The plaintiff's deed bounded him on the east by the west

line of the defendant's land, and when this line is ascertained there is no difficulty in determining on whose premises the walnut trees stood. To determine this line resort must be had to the defendant's deed from Christian Kime. He had no other title. This deed although dated in 1838 was not delivered until 1841. The defendant went into possession in 1838 under some arrangement with his father, the particulars of which do not appear, except that it was oral, and no part of the purchase money was paid before he took the deed, and he occupied up to a crooked north and south fence near to, but as he claims several rods east of his west line as defined in the deed, and the walnut trees were about two rods east of the fence. In the contract of sale to the plaintiff of June 30, 1858, it is stated "that the line fence between the land described (in the contract), and Benjamin Kime's land does not now stand on the line," but where the tree was whether east or west of the fence is not stated. If the true line according to the defendant's deed was east of the fence, no title by adverse possession to the land between that line and the fence had been acquired by the defendant previous to the deed to the plaintiff in 1859. To constitute an adverse possession from which a grant will be presumed, it must have been under a claim of title exclusive of any other right, and it must have been definite, exclusive and notorious, and for a period of twenty years uninterruptedly. (2 R. S., 294, § 9; Code, §§ 82, 84; *Jackson* v. *Johnson,* 5 Cow., 74.)

In any view of the evidence the defendant could not have held adversely prior to obtaining his deed in 1841, and if his possession was adverse from that time, it had not ripened into a title in 1859, when as executor he conveyed to the plaintiff the lands of his father, bounding him on the west by his own lands. The adverse possession if existing to that time, was then terminated. The defendant could not claim thereafter in hostility to his deed as executor and to his covenant in the deed, or in view of the provision in the contract that the fence which marked the boundary of his possession was not on the true line, that all the land owned by Christian

Kime at his decease on lot 23 to the defendant's true west
line was not conveyed to the plaintiff. The controversy
comes back therefore to the question, what was the west line
of the defendant's land according to his deed from Christian
Kime. The starting point in that deed is at a stone in the
north line of lot 23, at the northwest corner of Peter Van
Riper's land in that lot. This point is not in dispute. It is
ascertained and admitted. The first course is "thence on
said north line north eighty-nine and a half degrees west,
*twenty-six chains and forty-six links* to a stake." The second
clause in the description is " thence on J. Johnson's bound-
aries " giving four courses and distances to a stake at the
northeast corner of the land conveyed. The other lines of
the survey define the westerly, southerly and easterly bound-
aries of the land by courses and distances, each course termi-
nating at a stake except the last which runs to the place of
begining. In running out, the land according to the courses
and distances in the deed, it was found that the north-east
corner (on lot 18) was six chains, or thereabouts west of a
north and south fence across lot 18, which had been for thirty
or more years recognized as on the west line of John Kime's
land, and the defendant's west line on lot 18, according to
the courses and distances, would include a strip of land
about six chains wide, which John Kime had always occu-
pied and claimed under his deed from Christian Kime of
November 1, 1838. Nor would the lines of the survey close,
running the courses and distances in the deed, and if the
west line is located according to the courses and distances,
the defendant would have eighteen or twenty acres more
land than is called for by his deed. The plaintiff claims that
there was a mistake of six chains in the distance given in the
first course, and that the true length of that line is 20 chains,
46 links, instead of 26 chains, 46 links, as given in the deed.

The referee found upon this issue in favor of the plaintiff,
and the evidence supports his conclusion. We have referred
to the fact that running the courses and distances in the deed,
would carry the defendant's west line on lot 18 six chains

west of the east line of John Kime's land as that line has been established. There is this farther difficulty in running this first course 26 chains, 46 links from the starting point. It would terminate that line six chains west of the west boundaries of Johnson's land on lot 18, which the next clause in the description shows was the east line of the land on that lot, intended to be conveyed, and which the defendant has claimed to be his true east line from the line of the conveyance.

The stakes referred to in the description could not be found, at the time of the trial, but parol proof was given from which the referee could locate the stake mentioned in the deed at the termination of the eighth course in the south line of lot 23, and this point being found, as also the west line of Johnson's land, at the end of the first course, the mistake in the length of that course as given in the deed is apparent. There was much other evidence given on the trial, tending to the same conclusion, but it is unnecessary to refer to it particularly. It sufficiently appears from what has been stated, that the referee was justified in rejecting the length of the first course in the deed as a false description, by comparing it with the known monuments and locative calls of the grant. The rule is well settled that a conveyance is to be construed in reference to its visible locative calls, as marked or appearing upon the land, in preference to quantity, course, or distance; and any particular may be rejected, if inconsistent with the other parts of the description, and sufficient remains to locate the land intended to be conveyed. (*Hathaway* v. *Power*, 6 Hill, 454; *Drew* v. *Swift*, 46 N. Y., 204.) The Johnson boundary mentioned is in the nature of a monument, and it was competent to show where that boundary was, and also to give parol evidence of the location of the stakes existing when the defendant's deed was given and referred to in the description, although they could not be found at the time of the trial. (*Wendell* v. *People*, 8 Wend., 190; *Jackson* v. *Widger*, 7 Cow., 723; *Pernam* v. *Wead*, 6 Mass., 131; *Drew* v. *Swift*, *supra*.) The walnut trees were

west of the west line of the defendant's land, as that line was found by the referee, and the defendant was chargeable with waste in cutting them, under the circumstances proved.

The right of the plaintiff to treble damages was adjudged by the General Term on the first appeal (1 S. C. R. [T. & C.] Co.), and we concur in the views expressed by TALCOTT, J., upon this question.

There were several exceptions to the admission and rejection of evidence taken by the defendant on the trial. We have examined them attentively, and find no error in the rulings of the referee, which calls for a reversal of the judgment.

The judgment should be affirmed.

All concur, except FOLGER, J., not sitting; RAPALLO, J., absent.

Judgment affirmed.