JACOB BROOKMAN et al., Appellants, *v.* FERDINAND KURZMAN, Defendant.

A deed described the premises conveyed as situate in the city of New York, and bounded as follows : " Beginning at a point on the westerly side of Second avenue, distant fifty feet and ten inches from the *south-easterly* corner of Second avenue and One Hundred and Eleventh street; thence westerly and parallel with said One Hundred and Eleventh street, and partly through a party wall, eighty feet; thence southerly and parallel with Second avenue fifty feet; thence easterly and parallel with said One Hundred and Eleventh street eighty feet, to the westerly side of Second avenue; thence northerly and along said Second avenue fifty feet, to the place of beginning." The grantors had title to premises which would be included in the description if the word " south-easterly", were changed to south-westerly, and the grantee conveyed to plaintiff by deed, in which the description was thus changed. *Held*, that the use of the word " south-easterly " was not such a defect as justified defendant, a purchaser, in refusing to accept title; that by the intrinsic evidence fur-

nished by the deed it appeared indisputably that the intent was to use the word " south-westerly."

In construing the description clause in a conveyance such an interpretation will be adopted as shall give effect to the intention of the parties if it can be ascertained from the instrument.  For this purpose any particular may be rejected if inconsistent with other parts of the description, and if sufficient remains to locate the land intended to be conveyed.

(Submitted December 7, 1883; decided December 14, 1883.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon a case submitted under section 1279 of the Code of Civil Procedure.

The facts appearing in the case are substantially stated in the opinion.

*James M. Fisk* for appellants.  If the description is uncertain we can turn to the mortgages referred to in the deed, and from them secure the correct description of the property intended to be conveyed by the grantors of Flannelly.  ( *Worthington* v. *Hyler*, 4 Mass. 196 ; *Jackson* v. *Clark*, 7 Johns. 217; *Robinson* v. *Kine*, 70 N. Y. 154; *Hathaway* v. *Power*, 6 Hill, 454 ; *Drew* v. *Swift*, 46 N. Y. 204 ; *Augustine* v. *Britt*, 15 Hun, 395; *B.*, *N. Y. & E. R. R. Co.* v. *Stigeler*, 61 N. Y. 348 ; *Higinbotham* v. *Stoddard*, 72 id. 94.)

*Ferdinand Kurzman*, respondent, in person.  If the subject of a grant cannot be ascertained by its description the grant becomes void from the necessity of the case.  (2 Washburn on Real Property, 622, §§ 23, 24.)  The vendors under their contract were bound to convey a good title; not merely to give a deed sufficient in form.  (*Story* v. *Conger*, 36 N. Y. 637.)

RUGER, Ch. J.  In March, 1871, Nicholas H. Moore and wife, and Daniel Murray, conveyed to John Flannelly by warranty deed certain premises situated in the city of New York, described in said deed as follows :  " All those lots, pieces or parcels of land with the buildings thereon erected, situate, lying and being in the Twelfth ward of the city of New York, bounded and described as follows : Beginning at a point

on the westerly side of Second avenue, distant fifty feet and ten inches from the south-easterly corner of Second avenue and One Hundred and Eleventh street; thence westerly and parallel with said One Hundred and Eleventh street, and partly through a party wall, eighty feet; thence southerly and parallel with Second avenue, fifty feet; thence easterly and parallel with said One Hundred and Eleventh street, eighty feet, to the westerly side of Second avenue; thence northerly and along said Second avenue, fifty feet, to the place of beginning." The same deed also conveyed a lot of land on the *southerly side of One Hundred and Eleventh street, in the rear of the above-described premises.*

The question in this case is whether the court may and should in the interpretation of this description read it so as to transform the word "south-easterly" into the word "south-westerly."

It appears that Flannelly's grantors had title to the premises on the west side of Second avenue which would be included in such a reformed description. It also appeared that Flannelly conveyed the premises acquired by him under said deed by a description which gave as its starting place a point in the westerly side of Second avenue, fifty feet and ten inches from the south-westerly corner of such avenue and One Hundred and Eleventh street. The word "south-westerly" was also used in the description contained in all of the deeds conveying said premises subsequent and previous to said deed of 1871.

In 1882 the plaintiffs contracted to sell and convey the same premises to defendant, describing them in accordance with the corrected description. Under said contract and in performance thereof, the plaintiffs tendered to the defendant a deed of premises on the westerly side of Second avenue, which corresponded with the description in said Flannelly deed, except in the use of the word "south-westerly" in the place of south-easterly. The defendant refused to receive said deed and fulfill his contract upon the ground that the title of said plaintiffs was defective on account of the use of the word "south-easterly" in the Flannelly deed instead of the word "south-westerly."

Upon an agreed statement of facts the parties submitted the

question to the court whether the use of the word "south-east-erly" in the Flannelly deed, in contradistinction to the word "south-westerly" used in all other conveyances of this land, constituted such a defect in the plaintiffs' title as justified the defendant in refusing to accept the title offered to him. The court below held that it did and ordered judgment for the defendant.

In this we think they erred. We are of the opinion that by the internal evidence of the deed, the language of the description used, and the monuments, courses and distance therein referred to, it indisputably appears that the parties intended to use the word "south-westerly" therein instead of the word actually written. The use of a rough diagram, showing the intersection of the two streets named therein, crossing each other at right angles and running respectively north and south and east and west, demonstrates that the adoption of the term " south-easterly " as the one intended, would create a starting point for the boundary line of the property intended to be conveyed, in the center of Second avenue, and would locate the larger part of the granted premises in the traveled portion of such public highway. The same result would also follow if the description should be read as meaning the north-easterly corner of the said streets. The adoption of neither of the first two points stated would comply with the requirement of the deed, that the starting point should be on the westerly side of Second avenue, or that the first line should run parallel with One Hundred and Eleventh street; neither of the lines run from these points would include the buildings described as being upon the premises; nor run upon a line through a party wall, or finally terminate upon the westerly side of Second avenue, by a line which run along said Second avenue to the place of beginning.

The adoption of the term " north-westerly " as the corner intended would require the survey to run over the first line twice to make out the description, and leave a space of ten inches presumably running through the outer wall of the building, unconveyed on the line of One Hundred and Eleventh street,

thus cutting off the property from the street, and would also directly conflict with that portion of the deed which locates the other land conveyed in the *rear of the described premises on the southerly side of One Hundred and Eleventh street.*

The long established rules with reference to the construction of descriptions contained in conveyances require courts to adopt such an interpretation thereof as shall give effect to the instrument according to the intention of the parties, if that is discoverable from legitimate sources of information. (*Jackson* v. *Clark*, 7 Johns. 217; *Buffalo, N. Y. & Erie R. R. Co.* v. *Stigeler* 61 N. Y. 348.) In giving effect to such intention it is also their duty to reject false or mistaken particulars, provided there be enough of the description remaining to enable the land intended to be conveyed to be located. (*Hathaway* v. *Power*, 6 Hill, 454; *Wendell* v. *People*, 8 Wend. 189; *Loomis* v. *Jackson*, 19 Johns. 452.) It was said in *Robinson* v. *Kime* (70 N. Y. 154), that a conveyance is to be construed in reference to its visible locative calls, as marked or appearing upon the land, in preference to quantity, course or distance, and any particular may be rejected if inconsistent with other parts of the description and sufficient remains to locate the land intended to be conveyed. The rule that a monument controls other portions of the description in a deed is not inflexible; when the monument is repugnant to another of like character, or a map gives other results, the truth is to be ascertained from all of the facts of the case. (*Townsend* v. *Hayt*, 51 N. Y. 656; *Higinbotham* v. *Stoddard*, 72 id. 94.)

In the light of these rules what would have been the clear duty of any party who attempted to locate the land intended to be conveyed by this description?

Upon starting a survey from the south-easterly corner of Second avenue, he would find, not only that he was not beginning upon the westerly side of Second avenue but that he was locating the property conveyed in the public highway. Thus would be presented at the outset an insuperable obstacle to such a location; and this discovery would lead to the inevitable conclusion that the phrase used could not have been

intended by the parties, if there was any other meaning which could be extracted from the instrument. A further examination of the deed would disclose that the point of beginning was not only stated to be the westerly side of Second avenue, but also that the final line of such description was required to be entirely upon the westerly line of such highway and the southerly side of One Hundred and Eleventh street and terminate at the point of beginning on the westerly side of Second avenue.

It is impossible to mistake the location of the starting point of this description, which is thus not only twice correctly stated in the deed, but is also found to be in harmony with the location of all of the monuments referred to therein, as well as the remainder of the description. That part of the description which causes the place of beginning to be reached by a line along the westerly side of Second avenue from the south indicates unmistakably that the place of beginning was fifty feet and ten inches from the south-westerly corner of Second avenue and One Hundred and Eleventh street.

It is thus seen that the description contains abundant evidence as to the words which the draftsman intended to use.

The requirements that the land conveyed should be located on the westerly side of Second avenue, and to the south of One Hundred and Eleventh street; that the first line should run parallel with One Hundred and Eleventh street partly through a party wall; that the third line should run to the westerly line of Second avenue, and that the final line should run northerly along said Second avenue to the place of beginning, furnishes irrefutable evidence of the place intended for a starting point, and also of the intention of the parties as to the location of the land supposed by them to be conveyed by the deed in question.

We are not unmindful of the rule which excuses the vendee of real estate, under a contract of sale, from accepting a title which is of doubtful validity or questionable legality; but we are clearly of the opinion that the circumstances of this case remove it from any such category.

The judgment of the General Term should be reversed, and judgment ordered for the plaintiffs, with costs of both courts.

All concur.

Judgment reversed.