CHARLES W. CRONK, RESPONDENT, v. ELVIRA F. WILSON, APPELLANT.

*Construction of a deed — when parol evidence is admissible to aid in its construction — when courses and distances must yield to monuments.*

This action was brought to recover damages for an alleged breach of the covenants of warranty and quiet enjoyment contained in a deed executed by the defendant on September 1, 1881, by which she conveyed to the plaintiff "all that tract or parcel of land situate in the village of Canastota, Madison county, N. Y., on the east side of North Main street, in said village, and described as follows: Beginning at the south-west corner of the lot hereby conveyed, and running thence northerly along the east line of North Main street, seven rods, to the south line of a lot owned by first party, known as the 'Rose property' (so called); thence easterly, nine rods three and one-half feet, to a point seven rods and three feet north from Lewis street; thence southerly seven rods and three feet to the north line of Lewis street, at a point six rods and twelve feet east of North Main street; thence westerly, six rods and twelve feet, to the east line of North Main street, being the place of beginning. Bounded on the west by the east line of North Main street, on the north by the above mentioned Rose property (so called), on the east by land of Henry Taylor and on the south by north line of said Lewis street."

The plaintiff claimed to recover damages because of his alleged eviction from a gore of land lying along Taylor's west line, which he claimed was included within the measurements and was conveyed by the deed. It appeared that Taylor was in possession of the lot, adjoining on the east that conveyed to the plaintiff, under a deed from the defendant executed in May, 1881; that at the time of the plaintiff's purchase he was cultivating and using the said gore of land; that there was no fence between the two lots on Taylor's west line; that the plaintiff and the defendant attempted to survey the lot and measure the lines thereof, and that from their *data* the description was prepared. The court directed a verdict for the plaintiff for damages for the gore of land which had been conveyed to Taylor.

*Held*, that evidence of the facts and circumstances relating to the negotiations, and the taking of the deed and the occupation of the premises, were properly received in evidence to aid in the construction of the deed.

That upon the parol evidence given of such facts and circumstances, coupled with the description in the deed, it was error to hold, as a matter of law, that the plaintiff was entitled to recover.

That a fair interpretation of the description used in the deed of the defendant to the plaintiff, in the light of the surrounding circumstances and the parol evidence given, would tend to the conclusion, as a question of fact, that the defendant did not assume or intend to convey any portion of the Taylor lot to the plaintiff.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury in Madison county, for sixty-four dollars damages.

The action was brought to recover damages for an alleged breach of the covenant of warranty of title and quiet enjoyment contained in a deed executed by the defendant on the 1st of September, 1881, to the plaintiff, conveying a parcel of land in the village of Canastota, situated on the north-east corner of Main and Lewis streets, in that village. The description contained in the deed was as follows: "All that tract or parcel of land situate in the village of Canastota, Madison county, New York, on the east side of North Main street, in said village, and described as follows: Beginning at the south-west corner of the lot hereby conveyed, and running thence northerly along the east line of North Main street seven rods to the south line of a lot owned by first party, known as the 'Rose property' (so called); thence easterly, nine rods three and one-half feet, to a point seven rods and three feet north from Lewis street; thence southerly, seven rods and three feet, to the north line of Lewis street at a point six rods and twelve feet east of North Main street; thence westerly, six rods and twelve feet, to the east line of North Main street, being the place of beginning. Bounded on the west by the east line of North Main street, on the north by above mentioned 'Rose property' (so called), on the east by land of Henry Taylor, and on the south by north line of said Lewis street."

The plaintiff claimed that he had been unable to get possession of a gore of the land described within the measurements of the deed lying along Taylor's lot, because it was occupied and claimed by him under a prior deed from the defendant.

When the plaintiff rested the defendant moved for a nonsuit upon the grounds:

*First.* That the complaint did not state facts sufficient to constitute a cause of action.

*Second.* That the] plaintiff admits that he is in possession of all the land which the deed conveys, and upon the ground that the plaintiff has not shown that he has been evicted or ever dispossessed of the premises or of any land described in the grant.

The motion was denied and the defendant excepted.

At the close of the defendant's evidence, the defendant renewed his motion for a nonsuit on the same grounds as before stated. The court denied the motion and the defendant excepted. " Court then directed the jury to find a verdict for the plaintiff, and to assess his damages at sixty-four dollars," to which direction the defendant's counsel duly excepted. The defendant's counsel then requested the court to direct the jury to find for the defendant no cause of action, which the court declined, and the defendant's counsel duly excepted.

By the evidence it appeared that on the 21st of May, 1881, the defendant conveyed to Henry H. Taylor, by deed recorded on the 24th of May, 1881, a village lot of fifty feet front and rear, bounded as follows : " Beginning at Mrs. Lightheart's south-west corner on Lewis street, thence westerly on Lewis street fifty feet ; thence northerly parallel with the west line of Mrs. Lightheart's lot to the south line of the Rose lot (so called), about 118 feet ; thence easterly along the south line of said Rose lot to the north-west corner of Mrs. Lightheart's lot fifty feet ; thence southerly on (her) Mrs. Lightheart's west line to the place of beginning, be the quantity more or less."

It was shown that Mrs. Lightheart took title from Thomas Barlow June 18, 1880, and that her deed was recorded July 29, 1880. The case shows that it was conceded, as a matter of fact, that Taylor was in possession of his lot at the time the Wilson deed to Cronk was delivered. It was admitted that at the time of the conveyance by Wilson to Cronk the property marked Rose lot was owned by Wilson. Plaintiff then testified " that at the very time he purchased Taylor was cultivating the land covered by the gore on the map, having planted it to corn and potatoes, and was living in the house on the lot. 'I had no knowledge of the line except as Mr. Wilson pointed and measured;' that there was then no fence on Taylor's west line ; that Taylor built a board fence there in February or March, 1882, which has been there ever since, and that Taylor and William Bullard had possessed the property up to the commencement of this action." He also testified that prior to the purchase he and the defendant's son took a tape line and undertook to ascertain the boundaries of the lot proposed to be purchased by him.

In connection with John H. Wilson, the defendant's son, he testified that the son pointed out the line, and it came to the north-

east corner next to Mrs. Lightheart's, and that he took down the measurements and that they were put into the deed. John H. Wilson was sworn, and he says that "they ran north from Lewis street to the Rose line, as nearly parallel to the east line of Taylor's lot as possible; that he thought they ran west of Taylor's house as much as fifteen feet or more, and parallel with the east and west lines of the house; that this course measured seven rods and three feet, and ran to the Rose fence on the south line of the Rose lot; that there was no mark on the Rose fence which indicated Taylor's north-west corner; that Wilson told Cronk that to determine that point they would have to measure clear through from Taylor's east line, and then take out the distance across Taylor's lot; that the width of Taylor's lot was then mentioned as being forty or fifty feet wide; that in measuring the third line, the nine rods, three and one-half feet, they commenced at Taylor's north-east corner and measured through to the fence on the east side of North Main street; that they then measured the line on North Main street, Wilson holding the ring at the north-west corner of the lot, and Cronk going ahead and measuring off six rods; that Wilson then measured off another rod, commencing where Cronk said the end of the six rods came, and that the seven rods came to the fence on the north side of Lewis street; that there was then a fence on three sides of the lot in question, and that it measured just seven rods between the Rose fence and the fence on the north side of Lewis street; that the defendant, his mother, went down and executed the papers with the plaintiff, and that she knew nothing about the measurements."

*J. C. Fowler*, for the appellant.

*Forbes, Brown & Tracy*, for the respondent.

HARDIN, P. J.:

Upon the trial both parties gave evidence of facts and circumstances relating to the negotiations for and the taking of the deed and the occupation of the premises. Apparently neither side objected to such evidence being received in aid of the construction to be given to the deed in question.

In *Atkinson* v. *Cummins* (9 How. [U. S.], 479) it is held, viz.: "In all cases where a difficulty arises in applying the words of a

will or deed to the subject-matter of the devise or grant, the difficulty or ambiguity which is introduced by the admission of extrinsic evidence may be rebutted or removed by the production of further evidence upon the same subject calculated to explain what was the estate or subject-matter really intended to be granted or devised."

In *Pritchard* v. *Hicks* (1 Paige, 273) the chancellor says, viz.: "Where the subject of the devise or legacy is described by reference to some extrinsic fact, extrinsic evidence must be resorted to for the purpose of ascertaining that fact, and thus to ascertain the subject of the testator's bounty."

That case was referred to by Judge ALLEN with approbation, in delivering his opinion in *Mason* v. *White* (11 Barb., 187), where he says, viz.: "Were this a question upon the construction of a devise, or of a deed *inter partes*, it is possible that evidence of intent might be received to control the application of the description of the subject-matter of the devise or grant."

In *Pettit* v. *Shepard* (32 N. Y., 103) it was held, viz.: "When the description of land conveyed by deed is vague and uncertain, parol evidence of the intention of the parties as to the real boundaries is admissible. Parol evidence is admissible, not to contradict or vary the deed, but to identify the subject-matter." CAMPBELL, J., says: "The evidence was not given to vary or contradict the deed, but to identify the subject-matter, and to show what the grantor intended by 'the west half of lot No. 76.' In this view the evidence was rightly admitted. It tended to show the location and boundaries of the piece of land which the grantor intended to convey, and did convey, by the description, or rather the designation, 'the west half of lot No. 76.' " He further added, that after that evidence was received there was a question of fact proper for the jury.

In *Green* v. *Collins* (86 N Y., 254), *Pettit* v. *Shepard* is referred to approvingly as sanctioning parol evidence to ascertain what the grantor intended by "general designation of a particular portion" of land conveyed.

In *Barclay* v. *Howell's Lessee* (6 Pet. [U. S.], 499) it was said, viz.: "The right of the court to decide on the legal effect of written instruments cannot be controverted; but the question of

boundary is always a matter of fact for the determination of the jury."

Judge McLEAN says in his opinion : "It is the province of a court to instruct the jury that they should fix the boundaries of the tract in controversy by an examination of the whole evidence, and that artificial or natural boundaries called for, control a call for course and distance. But it would withdraw the facts from the jury if the court were to fix the boundaries called for, and then determine on the legal effect of the instrument. * * * It is as much the province of a jury to determine the limits of a lot in a city or town, as the limits of any tract of land, however large or small. And if the court on a question of boundary may fix the limits of the grant, and then say what the legal effect of it shall be, there is nothing left for the action of the jury."

In *Wendell* v. *The People* (8 Wend., 190) it is said, viz. : "Where there is nothing in the conveyance to control the call for course and distance, the land must be run according to the course and distance given in the description of the premises. But all grants or conveyances are supposed to be made with reference to an actual view of the premises by the parties thereto, and it is, therefore, a general rule in the construction of grants, that both course and distance must give way to natural or artificial monuments or objects, and courses must be varied and distances lengthened or shortened, so as to conform to the natural or ascertained objects or bounds called for by the grant. (*Dogan* v. *Leekright*, 4 Hen. & Munf., 125 ; *Doe* v. *Thompson*, 5 Cow., 371 ; *McIver's Lessee* v. *Walker*, 4 Wheat., 444.) And any visible or defined object, fixed upon by the terms of the grant as the boundary or locative call of the premises, such as a marked tree or clearing, the corner of a lot or the land of another person which is certain and notorious, must be adhered to in the location of the grant, although it does not correspond with the course, distance or quantity, which must all give way to such known boundaries." This case was approved and followed in *White* v. *Williams* (48 N. Y., 344).

In *Brookman* v. *Kruzman* (94 N. Y., 276), RUGER, C. J., says; "The long established rules with reference to the construction of descriptions contained in conveyances, require courts to adopt such an interpretation thereof as shall give effect to the instrument

according to the intention of the parties, if that is discoverable from legitimate sources of information. (*Jackson* v. *Clark*, 7 Johns., 217; *Buffalo, N. Y. and Erie R. R. Co.* v. *Stigeler*, 61 N. Y., 348.) In giving effect to such intention it is also their duty to reject false or mistaken particulars, provided there be enough of the description remaining to enable the land intended to be conveyed to be located. (*Hathaway* v. *Power*, 6 Hill, 454; *Wendell* v. *People*, 8 Wend., 189; *Loomis* v. *Jackson*, 19 Johns., 452.) It was said in *Robinson* v. *Kime* (70 N. Y., 154) that a conveyance is to be construed in reference to its visible locative calls, as marked or appearing upon the land, in preference to quantity, course or distance, and any particular may be rejected if inconsistent with other parts of the description and sufficient remains to locate the land intended to be conveyed. The rule that a monument controls other portions of the description in a deed is not inflexible, when the monument is repugnant to another of like character, or a map gives other results; the truth is to be ascertained from all the facts of the case. (*Townsend* v. *Hayt*, 51 N. Y., 656; *Higinbotham* v. *Stoddard*, 72 id., 94.)"

Towards the close of the description in the deed under consideration words were used apparently with the intent to bound the property by surrounding objects. The language is as follows: "Bounded on the west by the east line of North Main street, on the north by the above mentioned Rose property (so called), on the east by land of Henry Taylor, and on the south by north line of said Lewis street."

It must be borne in mind that the defendant had conveyed the lot to Taylor, about four months preceding the execution of the conveyance to the plaintiff. Taylor had gone into possession of it, was occupying the house situated on the lot, and was cultivating the land, and these facts were known to the plaintiff and to the defendant at the time of the execution of the deed in question, and it is fair to assume that the parties, in the use of the words " on the east by land of Henry Taylor," intended to adopt Taylor's west line of ownership as the east line of the land to be conveyed to the plaintiff. It is reasonable to interpret the word " land " as synonymous with " lot " or " parcel."

A somewhat similar description was the subject of consideration in *Northrop* v. *Sumney* (27 Barb., 196). In that case Judge

MARVIN, speaking for the court, said, viz.: "The point is made and argued that the description in the deed from Shaw to the defendant included the land to the south fence, and that as the defendant had been ejected from twenty-seven and one-fourth acres of the land, the covenants of his grantor have been broken, and the defendant may recover his damages and may, therefore, now have them abated from the bond and mortgage. This position cannot be sustained. The southern boundary, as described in the deed from Shaw to the defendant, is "by land heretofore deeded to Clark Hilton." The north line of the land conveyed to Hilton was susceptible of certain ascertainment, and it was the south line of the land conveyed to the defendant as described in the deed. Distance and quantity must yield to this line, which could be located with certainty. In a case not reported the Court of Appeals held that a line described as parallel with the line of the lot must be so located, though such location would violate the description as to course and distance. * * * By all the well settled general rules of construction relating to descriptions in deeds, the land conveyed extended no further south than to the land previously conveyed to Hilton. The least certain and material parts of the description must yield to those which are most certain and material, if they cannot be reconciled. (4 Kent's Com., 466.) In this case the lengths of the east and west lines and the estimated quantity of land must give way to the certain southern boundary. There has been no breach of any of the covenants in the deed from Shaw to the defendant."

In *Townsend* v. *Hayt* (51 N. Y., 656), it was held, viz.: "That the rule that a monument controls other portions of the description in a deed is not inflexible, but where, as in this case, there is a map giving a different result and the fixed monument is repugnant to another of a like character, the truth is to be ascertained from all the facts in the case." By the quotation made from *Brookman* v. *Kurzman*, it appears that that case was approved. Judge RUGER remarks, viz.: "When the monument is repugnant to another of like character or a map gives other results, the truth is to be ascertained from all of the facts of the case."

ANDREWS, J., in *Robinson* v. *Kime* (70 N. Y., 154), says: "The rule is well settled that a conveyance is to be construed in reference

to its visible locative calls, as marked or appearing upon the land, in preference to quantity, course or distance; and any particular may be rejected, if inconsistent with the other parts of the description, and sufficient remains to locate the land intended to be conveyed. The Johnson boundary mentioned is in the nature of a monument, and it was competent to show where that boundary was, and also to give parol evidence of the location of the stakes existing when the defendant's deed was given and referred to in the description, although they could not be found at the time of the trial." We are of the opinion :

*First.* That upon the parol evidence of the facts and circumstances given in evidence by the parties, coupled with the description in the deed, it was error to hold, as a matter of law, that plaintiff was entitled to recover.

*Second.* That a fair interpretation of the description used in the deed of the defendant to the plaintiff, in the light of the surrounding circumstances, and the parol evidence that was given, would tend to the conclusion, as a question of fact, that the defendant did not assume to convey and did not intend to convey any portion of the Taylor lot to the plaintiff.

*Third.* If the defendant had asked to go to the jury upon the question we are inclined to think that the court ought to have yielded to such request, but no such question is before us for review. (*O'Neill* v. *James*, 43 N. Y., 93; *Appleby* v. *The Astor Fire Insurance Company*, 54 id., 253; *First Nat. Bank* v. *Dana*, 79 id., 108; *Mott* v. *Mott*, 68 id., 253.)

Inasmuch as the ruling at the circuit held that the defendant, by warranty deed, conveyed to the plaintiff a portion of the Taylor lot, the possession of which had not been delivered to the plaintiff and could not be by the defendant, and that she was liable to damages by reason of the breach of her covenant, in that regard we think an error was committed, and that a new trial should be ordered.

Judgment reversed and new trial ordered, with costs to abide the event.

BOARDMAN, J., concurred; FOLLETT, J., not sitting.

Judgment reversed and new trial ordered, with costs to abide the event.