the charge of the justice to the jury. The question of the propriety of assuming by the justice the responsibility of instructing a jury and in directing a verdict requires no consideration.

The judgment of the county court should be reversed, and that of the justice court affirmed. All concur.

---

### HELLER et al. v. COHEN.

(Supreme Court, Special Term, New York County. December, 1895.)

1. VENDOR AND PURCHASER—MARKETABLE TITLE—DESCRIPTION.
   The incorrect description of land in a series of conveyances, which included only part of that claimed to have been intended, is not cured by a correct description in the deed of a referee who sold the premises in a partition action, where the decree incorrectly described the premises. Nor will it be cured by 20 years' possession under such deed, the extent of the holder's adverse claim being measured by the decree under which the deed was made.

2. SAME—ADVERSE POSSESSION.
   A purchaser cannot be compelled to accept the title to real estate, resting, as to a part of the premises, on a claim of adverse possession which has not been adjudicated.

3. SAME—WHEN TITLE NOT MARKETABLE.
   A title to real estate is not marketable when so defective as to affect the value of the land, or to interfere with its sale, or as to require parol evidence to clearly establish it.

Action by John H. Heller, Jr., and William S. Heller, as executors of and trustees of John H. Heller, deceased, against William Cohen, for specific performance. Complaint dismissed.

Bailey & Sullivan and Abram Stern, for plaintiffs.
George H. Yeaman and Julius Lipman, for defendant.

DAVY, J. The parties to this action entered into a contract for the sale and purchase of real estate located on the south side of Grand street, in the city of New York, by the terms of which the defendant was to pay therefor the sum of $100,000, of which sum $5,000 was paid at the time the contract was executed, and the balance was to be paid upon the delivery of the deed. When the deed was tendered, the defendant refused to accept it, on the ground that the title to the land was defective. The principal issue, therefore, raised by the pleadings is whether a marketable title has been tendered or not. The lot is described as "beginning on the south side of Grand street, at a point distant 75 feet 11½ inches westerly from the corner formed by the intersection of the southerly side of Grand street with the westerly side of Chrystie street; running thence southerly 125 feet 1 inch; thence westerly, parallel, or nearly so, with Grand street, 25 feet 1 inch; thence northerly 125 feet 3 inches to the said southerly side of Grand street; thence easterly, along said southerly side of Grand street, 25 feet to the point or place of beginning,—the premises hereby intended to be conveyed being now known and designated as and by the street number '245 Grand Street,' as now built upon and inclosed."

One of the principal objections raised to the title by the learned counsel for the defendant is that in all of the deeds, from 1810 down to 1867, the description of the lot commenced 75 feet from the north-west corner of Grand and First streets (now Chrystie), instead of beginning at the southwest corner of said streets. It is conceded by the learned counsel for the plaintiff that the description of the land in the original deed is imperfect, and that it would locate about four-fifths of the land in question in Grand street. But he contends that a correct description can be spelled out sufficiently to locate the premises. He also contends that the errors and imperfect description of the lot in the original deeds were corrected in 1867 by the referee, who sold the premises in the partition action. It is a rule well settled that every deed of conveyance, in order to transfer a title, must, either in terms or by reference to other deeds, give such a description of the land intended to be conveyed as will be sufficient to identify the same with reasonable certainty. The description of the lot in the referee's deed commenced at the southwest corner of Grand and Chrystie streets, instead of the northwest corner. This change, however, so far as it appears from the record, was made without any authority from the court. The decree which was the referee's guide, directed him to sell and convey to the purchaser the land described in the petition, which commenced at the northwest corner of Grand and Chrystie streets. The deed that was given by the referee purported to convey to plaintiffs' testator the entire interest of the cotenants in the land in controversy. The serious objection to his deed is that it did not include the land which the court had authorized him to sell and convey. Whatever the effect of this conveyance may have been as to those who held title to the land, it certainly was not a good execution of the decree of sale. I am inclined to think that it was wholly inoperative as to the premises in controversy. Scholle v. Scholle, 113 N. Y. 374, 21 N. E. 84. It was held in Laverty v. Moore, 33 N. Y. 658, that a conveyance under a decree of foreclosure cannot pass the title to land not embraced in the decree, though included by mistake in the description. People v. Bergen, 53 N. Y. 404. Where the deed conveys other property than the parties intended, or is void for uncertainty, a court of equity may reform it, so that it may conform to the intention of the parties; but a referee, without authority from the court, has no power to correct an erroneous description. In Cambrelleng v. Purton, 125 N. Y. 615, 26 N. E. 907, Judge O'Brien says that "a purchaser will not be compelled to take title where a doubtful question of fact relating to an outstanding right is not concluded by the judgment under which the sale was made." Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905. The mere fact that plaintiff's testator took possession of the premises under the referee's deed, and occupied the land for 20 years and upward, did not, of itself, establish an adverse possession. Neither did it amount to an ouster of the other cotenants, unless the possession was accompanied and followed by a hostile claim of title, of which all the cotenants had knowledge. Culver v. Rhodes, 87 N. Y. 353; Kneller v. Lang, 137 N. Y. 589, 33 N. E. 555. Where title is asserted adversely by a person claiming title founded upon a writ-

ten instrument or a judgment or decree, it is a rule of universal application that the extent of the claim must be measured by the ·instrument under which the claim is made.    Crary v. Goodman, 22 N. Y. 170.

There is another serious objection to the title, and that is, if the defendant is compelled to take a deed of the land embraced in the contract, it will include nearly one foot of land of the western boundary, to .which the plaintiffs have shown no record title, for which the defendant is required, by the terms of the contract, to pay about $4,000.  The plaintiffs concede that the western wall is constructed a short distance west of the description contained in the referee's deed, but they contend that plaintiffs' testator was in possession of this strip of land for more than 20 years, and that no claim has been made to any portion of it.    Title by adverse possession, where there is no disputed question of fact, and where the possession has been clear and undisturbed, may be upheld.    This class of titles, however, are not looked upon with favor by trustees of savings banks and insurance companies, who take mortgages on real estate as security for the loan of money. In order to establish title by adverse possession, it was incumbent upon the plaintiffs to show that the testator and his grantors held the land adversely and in open hostility to the true owners. It is not sufficient to hold it by their assent or permission, but it must be held in open hostility to their claim of title.    The cotenants and the owners of the adjoining lots on the west are not parties to this judicial controversy; therefore they would not be concluded by any judgment that may be rendered herein.    Judge Andrews, in Fleming v. Burnham, 100 N. Y. 10, 2 N. E. 905, says:

"A title open to reasonable doubt is not a marketable title.  The court cannot make it such by passing upon an objection depending upon a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested."

The plaintiffs' title, therefore, to at least a portion of the premises, must rest upon adverse possession; and whether all the statutory requirements have been sufficiently complied with to create a good title in the plaintiffs can only be determined by evidence aliunde.    There may have been infants interested in the property, who were protected during the period of their disability, whose rights in the land have not yet been cut off.    But, independent of the question of title by adverse possession, it is a rule of law that every conveyance should contain a sufficiently accurate description of the land and its boundaries, so that it may be identified. Where it is necessary to resort to parol evidence to supply the inaccuracies of the description appearing on the face of the deed, the record title must be regarded as seriously defective.    While a deed may not be declared void for uncertainty as long as it is possible, by any reasonable rules of construction, to ascertain from its context what property was intended to pass, yet, if it is so defective and uncertain that the property cannot be located, its market value must necessarily be impaired.    A close analysis of

the description of the land in the original deed will disclose the fact that the title is seriously defective. The description begins at a well-known point, which is capable of being ascertained, and runs thence, by courses and distances, around the lot, and ends at the place of beginning. The deed, therefore, could not in this action be contradicted or explained by parol evidence, and no extrinsic evidence tending to explain the mistake or intention of the parties could be resorted to. The northwest corner of Grand and Chrystie streets being an established natural monument, the courses and distances must yield to it. Yates v. Van De Bogert, 56 N. Y. 526. In the case last cited Judge Grover says:

"It is well settled that that which is most certain must control, and what is less certain must yield. Courses and distances must yield to monuments upon the premises, either natural or artificial."

It was held in Drew v. Swift, 46 N. Y. 209, that where a description begins at a point capable of being ascertained, and runs thence by courses and distances well defined, no extrinsic evidence tending to explain the intention of the parties, and thus give effect to the deed different from its terms, is allowable. The case of Brookman v. Kurzman, 94 N. Y. 274, cited by the learned counsel for the plaintiffs, is not controlling in this case, for the reason that it appeared upon the face of the deed that a mistake had been made in locating the starting point in describing the land intended to be conveyed. Chief Justice Ruger, who wrote the opinion of the court, says:

"It is impossible to mistake the location of the starting point of this description, which is thus not only twice correctly stated in the deed, but is also found to be in harmony with the location of all the monuments referred to therein, as well as the remainder of the description."

A bad title is defined in 2 Bouv. Law Dict. p. 732:

"To be one which conveys no property to the purchaser of an estate. A doubtful title is one which the court does not consider to be so clear that it will enforce its acceptance by a purchaser, nor so defective as to declare it a bad title, but only subject to so much doubt that a purchaser ought not to be compelled to accept it. A marketable title is one which a court of equity considers to be so clear that it will enforce its acceptance by a purchaser."

The question, therefore, in this case, is not whether the title is absolutely good or bad, but whether it is clear, and free from reasonable doubt. It is an established rule of law that a purchaser of real estate is entitled to a marketable title, free from liens, incumbrances, and defects in the title, unless he expressly stipulates to accept a different title. It has been repeatedly held that a marketable title is one that is free from reasonable doubt. Any defect, therefore, in the title that affects the value of the land, or will interfere with its sale, is not a marketable title.

It was held in Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, that:

"A purchaser is not bound to take a title which he can defend only by a resort to parol evidence, which time, death, or some other casualty may place beyond his reach. * * * That a good title means not merely a title valid in form, but a marketable title, which could again be sold to a

reasonable purchaser, or mortgaged to a person of reasonable prudence as security for a loan of money."

Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387.

In Irving v. Campbell, 121 N. Y. 354, 24 N. E. 821, Chief Judge Ruger says:

"A purchaser will not be compelled to take a title when there is a defect in the record title which can be cured only by resorting to parol evidence."

Vought v. Williams, 120 N. Y. 253, 24 N. E. 195.

The reasoning of the learned judge who wrote the opinion of the court in Commissioners v. Armstrong, 45 N. Y. 248, was to the effect that:

"When it is ascertained that there is an existing defect in the title, the purchaser will not be compelled to perform on the allegation that it is doubtful whether the defect will ever incommode him."

In the case of Church Home v. Thompson, 108 N. Y. 618, 15 N. E. 193, Judge Peckham, in expressing the views of the court, says:

"We think, if there was a reasonable doubt that the vendor's title is such as to affect the value of the property, and to interfere with the sale of the land to a reasonable purchaser, the plaintiff's cause of action could not be sustained."

The vast amount of documentary evidence introduced by the plaintiffs is conflicting and contradictory as to the location and description of the premises. If a decree for the specific performance of a contract relating to real estate is to possess any value, the record should describe the land involved with such accuracy and clearness that it can be identified, its quantity known, and its boundaries determined, beyond the possibility of future controversy.

In Jeffries v. Jeffries, 117 Mass. 184, the court held that:

"A defendant in an action for specific performance of a contract ought not to be compelled to accept a title that is in the least degree doubtful; that he ought not to be subjected, against his agreement or consent, to the necessity of litigation to remove even a cloud upon his title."

The record title to the land in question is so defective that it would, in my opinion, be very doubtful whether the trustees of any savings bank or insurance company, acting with reasonable prudence and caution, would take a mortgage thereon as security for the loan of money. Great injustice might be done to the defendant if he were compelled to fulfill the contract, and to take a deed of the premises.

Judgment, therefore, may be entered dismissing the complaint, and for $5,000, with interest thereon from the 1st day of February, 1893, together with the costs of this action.