By the Court.—Sedgwick, Ch. J.
The action is for the specific performance of a contract of the defendant to buy and of the plaintiff to sell real estate.
The contract describes the land as beginning at the southwesterly corner of Fourth avenue, and running thence westerly and along the southerly line of One Hundred and Twenty-fourth street eighty-nine feet, etc. The defendant does not claim that the plaintiff is not entitled to any part of the eighty-nine feet, but objects that the plaintiff has no title to a piece bounded by about five feet of the westerly end of the eighty-nine feet.
. Upon the trial it was agreed “ that the only question or issue to be tried is, as to whether by reason of the two mortgages mentioned in the answer, or either of them, and the proceedings taken thereunder, the title of the plaintiff to a portion of the premises to be conveyed by him has become defective to such an extent as to justify the defendant in refusing to accept such title,” etc.
As the respondent before us rests the objection upon the terms of one only of the two mortgages, there will be no further reference made to the other.
*365 That mortgage was made by persons named Houstoun and Feely under whom the plaintiff holds title, and was made before the conveyance of the title which plaintiff claims. The mortgage was to Grace T. Smith, and was dated March 6,1873. Its description was: “ Beginning at a point in the southerly side of 124th street, distant easterly 298 feet from the corner formed by the intersection of the easterly line of Madison avenue with the southerly side of 124th street, at or in front of the middle of a party wall, and running thence southerly and parallel with Madison avenue and partly through the center of said party wall, 100 feet and 11 inches to the center of the block, thence easterly on the center line of the block and parallel with 124th street, 18 feet, thence northerly and parallel with Madison avenue and partly through the center of a party wall, 100 feet and 11 inches, to the southerly side of 124th street, and thence westerly along the southerly side of 124th street 18 feet to the place of beginning.”
The defendant contends that the easterly line of Madison avenue, given in the deed, is at a certain place, and is intersected by the southerly line of 124th street, and measuring from such intersection two hundred and ninety-eight feet, and then 18 feet as the north dimension of the property mortgaged, the conjoined measurements will,, include the piece of five feet in dispute.
This position assumes, in agreement with the plaintiff, that the easterly line of the land as described by the mortgage, is conterminous with the westerly line of land to which the plaintiff had a valid title, and it also assumes that the mortgagor and mortgagee intended by their description, that the land mortgaged should be eighteen feet broad at both ends.
This latter assumption is no doubt correct, and for a like reason the land intended by the description was one hundred feet and eleven inches in length. These matters are certainties. It was equally certain from *366 the description alone, that the intention was to mortgage a piece of land, the sides of which should run in part through party walls.
It was proved on the trial that as matter of fact, there were party walls, or rather that there were walls, assumed in the examination to be party walls, eighteen feet from each other, and that the easterly one of these was about eighty-nine feet from Fourth avenue.
My difference from the learned judge below is at this point. He was of opinion that the description did not show where the westerly party Avail was. It seems to me, that if one should go upon the land, attempting to apply the description and bearing in mind that it was certain that the parties meant land eighteen feet wide at the north, and situate betAveen the centers of two walls, he would find that the end of the measurement of two hundred and ninety-eight feet easterly from the line of Madison avenue, as defendant claims it Avas, Avould leave him five feet east of the westerly party wall and thirteen feet west of the easterly party wall, Avith no other wall further east, as the land stood at the time of the mortgage. Or if the land were viewed as it noAv is, any wall easterly of the east party wall of the mortgage would be excluded, by the necessity of remaining at the end of íavo hundred and ninety-eight feet plus eighteen feet. The result would' be that as the line of eighteen feet must end at the east party line, its starting point AArould necessarily be the west party Avail.
These certainties, viz., that the lot was to be eighteen feet wide on One Hundred and Twenty-fourth street, and also that the line of these eighteen feet was between two Avails that can be identified as monuments, are corroborated by the position taken by the mortgagee, in foreclosing the mortgage. She proceeded to foreclose the mortgage, and gives the description of the property mortgaged, by averring the description as made in her mortgage. She further averred that the *367 mortgagors had delivered to one McCarty “ a deed of conveyance of the mortgaged premises hereinbefore mentioned, subject to the mortgage aforesaid, wherein and whereby the said McCarty assumed and agreed to pay said mortgage. She also averred that McCarty delivered to one Magits a deed of conveyance of said mortgaged premises, subject to the mortgage hereinbefore mentioned, wherein and whereby said Magits assumed and agreed to pay said mortgage,” etc. The mortgage specified where these deeds of conveyance are recorded. In these deeds the description is: “ Beginning at a point on the southerly side of 124th street distant 89 feet westerly from the corner formed by the intersection of the westerly line of 4th avenue (as widened) with the southerly fine of 124th street, running thence southerly and parallel with said 4th avenue (as widened) and part of the way through the center of a party Avail, to' the center line of the block, thence westerly along said center line of the block eighteen feet, thence northerly again, parallel Avith 4th avenue, as widened, and part of the Avay through another party wall, to the southerly line of 124th street, thence easterly along said southerly line on 124th street to the point of beginning, subject, hoAvever, to certain mortgages iioav on said premises, amounting in the aggregate to $10,000, which mortgages the party of the second part assumes and agrees to pay.” These mortgages of $10,000 Avere the one being foreclosed and another, to Avhich it has been said there is no call to refer.
Two things thus clearly appear—that the mortgagee understood that the measurement from Madison avenue Avas intended to end at the west party Avail, eighteen feet west of the east party wall, and that the east party wall was eighty-nine feet west from Fourth avenue.
It may be said here that Fourth avenue had been Avidened some years before the mortgage under examination.
Attention should now be given to the claim of defendant, that tAvo hundred and ninety-eight feet from Madi *368 son avenue was the intended point of beginning, and therefore as it is further claimed no land west of that point could have been intended to be conveyed.
ft is a rule applicable to records, contracts and conveyances composed of detailed particulars, that if there is certainty as to all the particulars save one, which is not harmonious with the rest, the meaning is to be inferred from the certain particulars, and the other is to be bent to them, or even rejected, if it is not a modification or limitation of the others. Brookman v. Kurzman, 94 N. Y. 272; Danziger v. Boyd, 53 Super. Ct. 398.
The case is not out of the rule because the particular to be subordinated, speaks as to the point of beginning. There may be a mistake or inadvertence as to that, as well as to any kind of specification.
In this case it has been before suggested that taking the two party walls as monuments, and it being certain that the parties intended that the land should be eighteen feet on 124th street, between those party walls, there was no uncertainty as to the land mortgaged being west of the land of the contract. This might justify an entire rejection of the first statement as to the point of beginning.
But it will appear upon an analysis of that statement, that certain parts of it are consistent with the rest of the description. Instead of measuring from what is assumed to have been Madison avenue, but beginning at the other end of the line at the center of the west party wall, west two hundred and ninety-eight feet, a point would be reached five feet west of the assumed easterly line of Madison avenue. This point would be on the easterly side of a street called New avenue, down to 1872. In April 12, 1872 (chap. 222), the legislature recognizes the earlier existence of this New avenue, but describes it as eighty feet wide. The act says the piece or parcel of land eighty feet wide lying between'the easterly and westerly lines of Madison avenue extended northerly, etc., now called New avenue, East, shall hereafter be known *369 as and form part of Madison avenue. The general situation was complicated in a manner that cannot be further alluded to for want of time. It, however, naturally would give rise to a doubt whether New avenue, per se, was identical with Madison avenue as intended by the act, or whether New avenue with an easterly addition was. In March, 1873, the old line of New avenue might be called the line of Madison avenue without any misuse of words, if one possible construction of the statute were taken as the correct one, viz.: a piece of land lying between the two sides of Madison avenue, but not extending from one side to the other, and extended from the southerly line of 120th street to the northerly line of 124th street, which piece of land is now called New avenue, East, shall hereafter be known as Madison avenue and form part of it, from the south to the north, in like manner and like effect as if the same had been originally laid out for a public street or avenue. There is no indication of any intention to take private land to make the new part of Madison avenue, or to place the line of the eighty feet east or west, of the old lines of New avenue.
Without going farther, it may, I think, properly be said that if the words Madison avenue do not accurately refer to New avenue it is a case of falsa demonstratio qum non nocet.
I am of opinion that the judgment should be reversed, and a new trial had, with costs to abide the event.
Truax, J., concurred.