THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY, Appellant, *v.* JOHN STIGELER et al., Respondents.

Where it appears by a deed that courses and distances from a fixed and determined line were intended to control instead of monuments referred to, the latter will be disregarded.

In an action of ejectment, plaintiff claimed under a deed to a railroad corporation which, after describing the premises conveyed as bounded on the southerly side by the lands of a third party, declared it to be the intention to convey a strip two rods in width on the south side of the center line of the grantee's road. The land in controversy lay south of a line two rods south of such center line. It did not appear that at the time of the conveyance the northerly line of the lands of the third party referred to were marked by a fence or any fixed monument. *Held,* that the fair inference from the description was that the center line of the railroad, as fixed and located when the grant was made, should control; and that the distance designated limited the extent of the grant.

(Submitted May 29, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of defendants, entered upon an order denying a motion for a new trial, and directing judgment upon an order nonsuiting plaintiff upon trial at Circuit. This was an action of ejectment.

The action was brought to recover a piece of land in the village of Batavia in Genesee county, described in the complaint as bounded on the northerly side, by a line parallel with and two rods southerly from the center line of the track of the plaintiff, and on the southerly side by lands conveyed to the Buffalo and Rochester Railroad Company, by Richard Yielding and wife, by deed dated September 29, 1851, on the westerly side by land of Trumbull Cary, and on the easterly side by land of the New York Central Railroad Company (formerly of the said Buffalo and Rochester Railroad Company).

The plaintiff on the trial claimed title under a deed from the said Richard Yielding and wife, to the Buffalo, Corning and New York Railroad Company, dated December 8th, 1852, and subsequent mesne conveyances, by which the title to the land described in said deed, had become vested in it.

The premises conveyed thereby are described therein as follows, viz.:

"All that certain parcel of land in the village of Batavia, county of Genesee, New York, bounded on the easterly end by lands of the Buffalo and Rochester Railroad Company; on the westerly end by lands of Trumbull Cary; on the northerly side by lands of said grantors; and on the southerly side by lands of said Buffalo and Rochester Railroad Company, and being 140 feet in length, as measured on the center line of said railroad of said grantees, as now located, and embracing and hereby intended to convey three rods in width at the north side of said center line, and two rods in width on the south side of the same, containing five-tenths of an acre, be the same more or less."

It was admitted by the counsel for the respective parties that the lands in dispute are south of a line drawn two rods southerly from the center line of the Buffalo, Corning and New York Railroad Company, as located at the time the deed was given.

It was claimed, by the counsel for the plaintiff, that the lands described in the conveyance from Richard Yielding and wife, which was introduced by him in evidence, included and was intended, by its terms, to convey the lands described in the complaint.

The counsel for the defendants claimed that such was not the proper construction to be given to the deed.

The court decided that the plaintiff could not recover on the evidence offered, for the reason that the land in question was not included in or covered by the description in said deed, to which ruling and decision the plaintiff duly excepted.

The court then, on motion of the counsel for defendant, nonsuited the plaintiff, for the reason aforesaid, to which the counsel for the plaintiff excepted. Exceptions were ordered to be heard in the first instance at General Term.

*A. P. Laning* for the appellant. In conveyances of land, monuments and fixed points control courses and distances.

(4 Kent's Com., 466; *Northrup* v. *Sweeney*, 27 Barb., 196; *Jackson* v. *Camp*, 1 Cow., 612; *Newton* v. *Prior*, 7 Wheat., 10; *Preston* v. *Boardman*, 10 id., 582; *Doe ex dem. Arden* v. *Thompson*, 5 Cow., 371; *Jackson* v. *Widges*, 7 id., 723; *Wendell* v. *Jackson*, 8 Wend., 183; *Smith* v. *McAllister*, 14 Barb., 439, 440; *Cordney* v. *Early*, 4 Paige, 209.)

*M. F. Robertson* for the respondents.

LOTT, Ch. C. It is doubtful whether there are sufficient facts disclosed by the case and exceptions, as presented to us, to raise the question whether the courts below erred in deciding that the land in dispute was not included in or covered by the description in the deed from Yielding and wife to the Buffalo, Corning and New York Railroad Company, above referred to, and under which the plaintiff claimed title. Although it was conceded, and admitted by the counsel of the respective parties at the trial, that the lands in dispute are south of a line drawn two rods southerly from the center line of the railroad of the said company, as it was located at the time the said deed was given, it does not appear that the northerly side of the land of the Buffalo and Rochester Railroad Company, which was referred to as the boundary on the southerly side of the premises conveyed by the said deed, was designated and marked by any fence, trees, stones, or fixed monuments of any kind; or whether it was so described in the deed under which the Buffalo and Rochester Railroad Company held title as to define with certainty its location; or, indeed, to show that it owned land between a line two rods south of the center line of the plaintiff's road and its own railroad. It can therefore not be claimed that the general rule, that fixed and permanent monuments control courses and distances where there is a discrepancy between them, sustains the position that the plaintiff's grant extends to the land of that company, wherever it may be located. The reason of the rule is said to be that conveyances are supposed to be made with reference to an actual view of the premises

by the parties.   Hence, courses and distances must be varied
to conform to actual or ascertained objects, or fixed bounda-
ries designated or referred to by them ; but when it appears,
from the designation of quantity or other elements of descrip-
tion, that the courses and distances, from a fixed and determined
line, were intended to control monuments, then the latter
should be disregarded.  The intention of the parties as evi-
denced by the deed is, in all cases, to determine the location of
the premises granted by it.   There is nothing in the convey-
ance in question to indicate, with certainty, that the northerly
undefined boundary of the Buffalo and Rochester Railroad
Company should fix and determine the southerly line of the
premises conveyed by it.   On the contrary it is fairly to be
inferred from the description therein that it was understood
and intended by all the parties to it, that the center line of
the road of the Buffalo, Corning and New York Railroad
Company, as located when the grant in question to it was
made, should control the location of the property conveyed.
The general act, authorizing the formation of railroad corpo-
rations requires that the line or route of railroads constructed
under it shall be fixed on actual survey, and that a map of
such location should be filed in the clerk's office of every
county through which the road was to run, and a similar require-
ment of railroad corporations incorporated under special acts
of the legislature is generally, if not in all cases, contained in
such acts.   It was doubtless the object of that company to
obtain and the intention of its grantors to grant the land
intended to be conveyed to it, for the purposes of its road, and
the center line thereof, as actually located by it, was agreed
upon as the line from which the land on each side should be
measured, and the distances designated in the deed were to
limit the extent of the grant.   The parties therefore knowing
the uncertainty of the description of boundaries by merely
referring to other lands, and especially when the *remaining*
lands of the grantors, without any marks defining them, were
referred to as the northern boundary, adopted the center line
of the grantees' road as fixed, determined and actually located

as the controlling line by which the general description was to be limited and controlled, and after such general description added the following expressive terms: "And being 140 feet in length as measured on the center line of said railroad of said grantees as now located, and embracing and hereby intended to convey three rods in width at north side of said center line, and two rods in width on the south side of the same, containing five-tenths of an acre, be the same more or less." This clearly shows that it was unquestionably the *intention* of the parties (for they so emphatically declare) to make that center line the controlling point along the whole distance thereof, as actually located and thus being in the nature of a monument, from which the boundaries on the north and south sides were to be ascertained, and to make certain by designating specified distances to be measured therefrom what, by the previous general description, was left uncertain. It would be necessary, for the purpose of justifying and sustaining the construction contended for by the plaintiff, to sacrifice and defeat the manifest intention of the parties so expressed and declared, by the adoption, as the only monument to limit the grant, of the indefinite and uncertain boundary of the land of a third party mentioned in the deed, unknown, so far as it appears, to either party, instead of the courses and distances specified therein which can be ascertained and fixed with mathematical precision and certainty by reference to a known line, specially designated for that specific purpose.

Without further discussion of the question, I will conclude by the expression of my general concurrence in the views of Daniels, J., in his able and exhaustive opinion delivered by him on the affirmance of the judgment by the General Term of the ruling and decision of the learned judge who tried the case at the Circuit.

It follows from what has been said that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.