to pay Sheldon for his commissions. The whole amount of those payments was nearly $460,000; and to ascertain, therefore, the actual amount of the plaintiff's contribution, those payments must be deducted from the sum of $650,000, which was the price of his stock. If that be done, it will be seen that his actual contribution was only about $200,000. So, if the syndicate agreement is to be abandoned, and the amount received by the pool is to be distributed in strict proportion to the actual instead of the estimated amount of the contributions, the plaintiff's share, instead of being the proportion which $650,000 bears to $15,000,000, would be that which $200,000 bears to $8,700,000.

(60 App. Div. 349.)

## TUXEDO PARK ASS'N v. STERLING IRON & RY. CO.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

1. DEED—BOUNDARIES—EVIDENCE.

For the purpose of locating a boundary of land described in a deed by courses and distances and monuments, a stone heap and marked white oak tree being found where a red cedar tree on a bluff of rocks was called for, evidence is admissible that the description was made from a survey made at the time of, and identical with, a practical location made by the parties to the deed.

2. RIGHT OF WAY—LOCATION.

Mere temporary use of a way, with intention to use a road in course of construction when completed, is not a location, within a deed giving a right of way, to be located by mutual consent.

O'Brien, J., dissenting.

Appeal from special term.

Action by the Tuxedo Park Association against the Sterling Iron & Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, and O'BRIEN, JJ.

Howard Mansfield, for appellant.
Charles F. Brown, for respondent.

HATCH, J. This action was brought, under section 1638 of the Code of Civil Procedure, to compel the determination of conflicting claims to real estate. Two questions are presented for determination: First, the ownership of a strip of land, about 200 feet in width, extending north and south the whole length of the plaintiff's premises, along the westerly side; and, second, a right of way alleged by the defendant to exist in its favor over and across the plaintiff's premises. The court below found and decided in favor of the plaintiff on both questions, and from such decision, and the judgment entered in pursuance thereof, this appeal is taken.

The undisputed facts are that in 1854 Peter Lorillard was the owner of a tract of land situate in the counties of Orange and Rockland, in this state, known as the "Augusta Tract." On May 1, 1854, Lorillard conveyed the western portion of said tract, lying and being in Orange county, to Josiah Mead and Morgan Shuit, by deed of con-

veyance of that date, who thereupon took possession of the portion so conveyed to them. The remainder of the Augusta tract, lying on the east of the portion conveyed to Mead and Shuit, has passed by mesne conveyances to the plaintiff, which has been in possession and ownership thereof since November 27, 1885, and the premises so conveyed to Mead and Shuit has passed by mesne conveyances to the defendant, to which it was conveyed on April 1, 1864.

The determination of the ownership of the strip of land in question depends upon the location of the eastern boundary line of the defendant's lot, as described in the deed from Lorillard to Mead and Shuit, in which the premises are described as follows:

"Beginning at a heap of stones at the southwest corner of the sawworks tract, in the line of Mountain lot number eight; and runs thence south, fortyfour and three-quarters degrees west, one hundred and seventy-four chains, to a heap of stones on the south end of a ridge of rocks in the Gore line; thence north, seventy-five and a half degrees west, fifty-three chains, along the Gore line, to a stake in the west edge of a swamp, and at the northeast corner of a hundred-acre lot of land known as the 'Ketchum Lot'; thence south, fifteen and a half degrees west, twenty-five chains, to a heap of stones on a small rise of ground; thence north, seventy-five and a half degrees west, forty chains, to a heap of stones sixty links north of the Sterling road, at the southwest corner of the Ketchum lot; thence south, fifteen and a half degrees west, twenty-five chains and forty links, to a stake in the swamp; thence south, forty-six degrees east, one hundred and three chains, to a stake and stones; thence north, forty-four and three-quarters degrees east, two hundred and sixty-two chains and forty-five links, to a red cedar in the sawworks line, on a bluff of rocks; thence north, forty-five degrees west, fortyseven chains, along the last-mentioned line, to the place of beginning."

The trial court has found that the easterly line described in this deed is the line claimed by the plaintiff, and is indicated by a black line between points shown on a certain map introduced in evidence, known as the "Wilson and Washburn Surveys," the point "G" being in the south line of the land referred to in the deed as the "Augusta Tract," and point "H" being in the south line of the lands mentioned in said deed as the "Sawworks Tract." The practical difficulty in the establishment of this line as the easterly boundary of the lands conveyed to Mead and Shuit results from a dispute as to the identity and location of the monuments referred to as indicating the respective southeast and northeast corners, viz. the stake and stones at the southeast, and the red cedar on a bluff or rocks at the northeast, corner.

For the purpose of supporting its contention, the plaintiff introduced parol testimony of certain witnesses, in addition to the surveys and testimony of the surveyors making them, and it is urged on the part of the appellant that the admission of such evidence was error for which the judgment should be reversed; that it violates the wellsettled rule that, where the terms of description in a deed are clear and no latent ambiguity is shown, extrinsic evidence cannot be given tending to contradict, vary, or explain the description. Counsel for respondent concedes this rule, but takes the position that no attempt has been made to violate it in this action; that the plaintiff stands upon the deed to Mead and Shuit, and that the testimony objected to tended to verify the description in the deed, and to locate the same

upon the ground, so far as the eastern boundary is concerned; that that line was surveyed and measured, and the courses taken on the ground and located, by marking the trees before the Mead and Shuit conveyance was executed, and the description in the deed was made from such survey and measurements; and that the location so made accords with the description in the deed, harmonizes with the monuments, and has been acquiesced in by the owners of the respective premises for a period of upwards of 20 years.

There can scarcely be ground for argument over the competency and relevancy of the evidence in question in the view expressed. Its admission does not violate the rule invoked by appellant, as a careful examination of the authorities cited by him will show. We shall not attempt to distinguish the cases, but it will be seen that in the case at bar there is no question of intent to convey something not embraced in the description. The evidence is not resorted to to vary the terms or aid in the interpretation of the deed, as was the case in every one of the authorities cited, but for exactly the contrary purpose, viz. to demonstrate that the description was made from a survey made at the time of, and identical with, a practical location made by the parties to the deed, and that they still coincide. As already indicated, the controversy as to this line arises, largely, from the dispute as to the corner monuments referred to in the deed, and the rule is invoked that visible, known, and fixed boundaries, monuments, or natural objects existing at the time, as a river, a spring, a marked tree, etc., referred to in a deed, control quantity, courses, and distances, where they conflict. But, as an exception to the above general rule, it has been held that where the courses and distances are right in themselves they will prevail against monuments, so as to carry out the intent of the parties. Higinbotham v. Stoddard, 72 N. Y. 94; Townsend v. Hayt, 51 N. Y. 656. Where the courses and distances are to form a fixed line or to inclose a fixed quantity, they will control natural boundaries (Railroad Co. v. Stigeler, 61 N. Y. 348; Higinbotham v. Stoddard, 72 N. Y. 94); and where monuments existing at the time of a conveyance are referred to therein, which have since disappeared, parol evidence of their location is competent (Robinson v. Kime, 70 N. Y. 147, 154). There is no claim made that the courses and distances in the deed in question are not right in themselves. The deed incloses a fixed quantity of land, and it is not suggested that the line established by the trial court does not inclose the exact quantity; consequently the case shows no attempt to depart from the description, the question is one of fact, and the proofs fully sustain the findings of the trial court as to the location of the disputed boundary.

The plaintiff produced as a witness Josiah Mead, the grantee of that name in the deed in question (Morgan Shuit, the other grantee, having died some years before the trial), and from his testimony it appears that the preliminary negotiations for the Mead and Shuit purchase were had with one Josiah Patterson, who lived on the property, and was the agent of the grantor, Mr. Lorillard; that before the conveyance from Lorillard was executed and delivered the east line of the premises was surveyed along a location made at the time by blazing

and marking trees along the line, and by certain measurements from natural objects. The witness and Patterson measured a distance of 500 feet from Tuxedo Lake west, to a point in this line, which they indicated, as he remembers it, by marking a tree. Witness was not present at the beginning of the survey, but it appears that they started at the north line, and that he joined the party, consisting of several people, near the point where this 500 feet was measured, and continued through to the south line; that they chained the distance along the course indicated by the surveyor, and at certain distances from each other marked trees in proximity to the line, by making a blaze and three hacks with an ax, and in that way located the southeast corner. At the point where the measurement of 500 feet from the lake was made there was an old road. The whole tract was surveyed at that time, but the witness was not present all the time. He was present, however, when the corner 25.40 chains, 5.15$\frac{1}{2}$° west, of the chestnut stake in Bear Swamp was located, and testified that there was a pile of stones there at the Sterling road. From this witness, the only one called having any personal knowledge of the facts, it was shown that the lines of the Mead and Shuit purchase, particularly the east line, were surveyed and practically located at the same time, prior to the delivery of the deed or possession of the premises. Mead further testified that, after the delivery of the deed, Mead and Shuit took possession of the property, and Mead commenced cutting wood, and cut along the line which he had helped to locate; that he observed that line, and never cut over it; that Patterson cut wood east of the line, he and Patterson each cutting up to the line; that the line of the cutting joined, and the line between was the line located and surveyed as the east line of the Mead and Shuit purchase; that Mead and Shuit always observed the line as located as their east boundary, and never claimed ownership of any land east thereof. He further testified that he located a charcoal pit east of the line on Lorillard's premises without permission. Before the trial Mead went over the east line and examined it twice. He found many of the trees blazed along the line as located at the time of the survey, and the old charcoal pit just east of it. The trees so found by him were large, and showed evidences of where notches had been. He had had experience as a woodsman for 50 years, and testified that the marks on the trees indicated long growth. He recalled the Babcock brook, which is there to-day, and that his coal pit was north of it, and the line ran northwest of the brook, which runs the same course to-day.

Wilson, a surveyor who made the map upon which the trial court has established the line, testified that he had surveyed parts of the Mead and Shuit tract. He started at the monument in the Gore line. This is a well-defined monument, consisting of a heap of stones, and is referred to in the deed as being "S., 44$\frac{3}{4}$° W., 174 ch. from a heap of stones at the southwest corner of the sawworks lot, in the line of Mountain lot number eight." The location of this monument is undisputed, and it is of great importance in determining the location of the line in question. From this monument he ran a course northerly, as indicated in the deed, until he reached lots 5 and 6 of the Great Mountain lot No. 8, where he found a pile of stones around an old

stump, which was moss-covered, and had the appearance of very great age. After correcting his line to correspond with the variations of the needle (the original survey having been made in 1854 and his in 1893), it showed a course north, 470° 5' east. A significant fact in regard to the line from the Gore monument to the southwest corner of the sawworks lot—the westerly line of the Mead and Shuit lot—is that the course as given in the deed is 44¾° west, while the course of the east line—the one in dispute—as given in the deed is 44¾° east. The east line is straight its whole length, and the west line, from the Gore monument to the northwest corner, is also straight, and the courses called in the deed show that these lines are exactly parallel from the north end to the Gore monument, while the east line continues the same course to the southeast corner. From this fact strong points corroborating the plaintiff's location are demonstrated. Wilson testified that the line so run by him corresponds with the description of said line in the Mead and Shuit deed, allowing for the variation of the needle. No other lines were surveyed by this witness in 1893, but in 1897 he made another survey. He surveyed the north end of the Mead and Shuit lot. He found at the northeast corner, in the line of a fence erected by the plaintiff along the east line, a stone heap or bluff of rocks, and a white oak, marked. This is the point found by the trial court as the northeast corner described in the deed. It is true that no red cedar tree "on a bluff of rocks," as called in the deed, was found. Red cedar trees were found by him scattered about there, but they were small, and did not show age enough to have been the one mentioned. Further to the east he found another heap of stones, which he describes as a pile of loose stones, without the appearance of age, while the one first mentioned, where the marked oak stands, had the appearance of age. The stones were embedded in the ground, vegetation was growing around them, and they were moss-covered. This evidence is corroborated by the witness Washburn, also a surveyor, who was with Wilson. We shall not discuss in detail all the steps in this survey. The two men surveyed the larger part of the description, and plotted the rest according to the calls in the deed. They did survey from the monument mentioned in the deed as "a heap of stones sixty links north of the Sterling road," at the corner of the Ketchum lot (which it will be remembered Mead saw at the time of the original survey), around the southerly boundary of the premises; and located what they decided was the southeast corner of the Mead and Shuit lot. From this point, which has been found by the trial court to be the true corner called in the deed, they ran a course north along the course called in the deed the "east line," to a point opposite the Gore monument, and in so doing found eight marked and blazed trees standing in or near the line, which, from his description, corresponds with the trees marked at the time the location was made. The one standing opposite the Gore monument was a marked chestnut. Washburn testified that he found other marked trees north of those described; that he went the whole distance north, and found a number of marked trees so situated as to indicate the line, some of them very old; and he describes four of them, with their location and the character

of the marks,—all of which tends strongly to corroborate Mead as to the real location of the line on the ground. He also found a coal pit, evidently the one described by Mead, about 10 feet east of the line; the ground west of it being steep and rocky, as described by Mead. An examination of the map appearing in the record, and used by the court in making its decision, shows the strength of all these facts as tending to fix the practical location and the actual survey at the same place. They found 12 trees standing along the line, extending over more than half the course, marked, and so situated as to lead to the conclusion that they are the identical trees mentioned by Mead. They locate the old road, the Babcock brook, the coal pit, and the swamp and Tuxedo Lake at a point just about 500 feet west of the line so located; and they find at the corners designated by them monuments substantially conforming to the calls in the deed.

We now call attention to other measurements made by those surveyors, which equally impress us with their relevance and force, as tending to establish the correctness of the location claimed and found. The north line of the premises conveyed to Mead and Shuit is described as 47 chains from the northwest to the northeast corner. As already pointed out, the east and west lines are exactly parallel from the north end to the Gore monument, so that a line run from the latter point east, the course and distance called in the deed for the north line, must, of necessity, strike the east line, and the east line must, of necessity, pass through the point so found. This claim is verified by the measurements made. Measuring from the Gore monument, —as to the location and identity of which there is no dispute,—east, over the course called in the deed for the north line, they struck the line as located by them at a point 47 chains and 1 link from the monument,—only 1 link further east than the length of the north line. There they found a marked chestnut tree very near the line, and of such character that it might well be one of those blazed by the surveyors when the line was originally run. It was 18 inches in diameter, with a blaze and three hacks on the west side, and stood 1½ feet west of the line. They then measured from a point in the west line 4,735 feet north of the Gore monument, east, the course and distance called in the deed for the north line, and at the distance of 47 chains they struck the line located by them at a point about 470 feet west of the Tuxedo Lake. As we view it, these measurements alone establish the correctness of the location with sufficient certainty. It would be absurd to say that the east line could be located 200 feet east of these points. Had the surveyors found at the point indicated by them as the northeast corner a cedar tree, no one could find ground for debate. They did find the bluff of rocks and a tree marked at substantially the distance called for in the deed. The variations in measurement, which are slight, are explained and accounted for by the nature of the premises, which are rough, mountainous, and wooded. Defendant's own surveyor testified that no two surveyors could chain the distances alike, and one could not do it twice alike. The monument which the defendant claims as establishing the northeast corner,

where the cedar tree was found blown over, is absolutely discredited. In the first place, it does not have the characteristics of sufficient age to lead to the conclusion that it is the one mentioned in the deed, and, in addition, a witness testified that he built that monument 10 or 11 years before the trial, at the direction of a surveyor from Boston. So that, whatever it indicates, it is entitled to no weight or authority as tending to establish the location and identity of the monument mentioned in the conveyance.

We have very carefully considered the evidence on the part of the defendant, and, while not passing upon the competency of any of it, but giving it full force and credit, it cannot be said to present a case of preponderance of evidence, so as to call for the reversal of this judgment. On the contrary, we are constrained to find that the effect of the plaintiff's evidence is to establish, beyond reasonable question, the correctness of the conclusions of the trial court. It establishes with certainty the west line of the Mead and Shuit lot from the Gore monument, which is undisputed, north to the southwest corner of the sawworks lot, in the line of Mountain lot No. 8, and fixes the location of the Gore monument. The east and west lines being parallel, and equal distances apart from the north to the Gore monument, and the east line continuing south the same course, it follows that the east line, at a point east of the Gore monument on the course of the north line, must be 47 chains east therefrom. The line established does so pass, with the variation of but one link. The east line must pass about 500 feet west of the Tuxedo Lake. A line measured from a point 4,735 feet north of the Gore monument does strike the line as located at a point 470½ feet west of the lake. A line passing through the point 47 chains east of the Gore monument, parallel with the west line, should find at its southerly end, marking the southeast corner of the lot, a stake and stones. The line as located does reach such a monument, substantially corresponding to the call of the deed. The true line should pass through or near certain marked trees. It should run west of the Babcock Swamp, west of the old coal pit, and about 500 feet west of the lake, if it be the line located by Mead and others. This line does so pass. The line contended for by the defendant could not be made to verify as does the one claimed by the plaintiff, but ignores all the distinguishing marks except corner monuments, while the monument claimed to mark the northeast corner is wholly discredited, and cannot be found to answer the call in the deed.

The question as to the right of way claimed by the defendant over the premises of the plaintiff described in the complaint arises under the answer, in which the existence of the right of way is averred, and judgment asked that the same be confirmed and established by judgment of the court. The facts are briefly as follows: By the deed from Peter Lorillard to Mead and Shuit, the privilege of a right of way was granted to said Mead and Shuit in the following terms: "With the privilege of a right of way to said land over the land of the said Peter Lorillard, to be located by mutual consent, to the land hereby conveyed." The land referred to as the land of Lorillard is the same now owned by the plaintiff. Counsel for

appellant contends that this deed contains an absolute grant of a
right of way, and that the proofs establish the location of the way
by mutual consent, and the continued use of such right of way by
Mead and Shuit and their grantees, including the defendant. The
trial court found and decided that no right of way was ever located
by mutual consent, and the judgment entered provides that "this
provision of the judgment in respect to the easement aforesaid is,
however, granted without prejudice to the defendant's right to com-
mence and maintain an action to locate a right of way in accordance
with the terms of the deed," etc. We think the court was right in
finding and deciding against the defendant upon this question. It
appears that there was a temporary way over the plaintiff's premises
across the dam at Tuxedo Lake, and connecting with the Continental
road, but the Continental road was discontinued as a highway prior
to the plaintiff's purchase of the property. The discontinuance of
this highway rendered the way across the dam and up the hill use-
less, so far as affording any ingress or egress to and from the Mead
and Shuit property. The way became a mere cul-de-sac. It was
effectually closed at its easterly end. Defendant made no opposi-
tion to the closing of the road, and the proofs show no use of the
private way later than 1884. No witness testified to the location
except Mead, and his testimony clearly indicates that the right to
cross the dam and go up the hill to the Continental road was tem-
porary. At the time consent was given to draw wood from the
Mead and Shuit tract over the route indicated another road was in
process of construction, which went northerly, but did not cross
the dam, and Mead testified that he intended to use that new road
when it was completed. That road was subsequently constructed,
and it is apparent that neither Mead nor Patterson intended that
the permanent way should be across the dam, and up the hill to the
Continental road, and there cannot be said to have been any loca-
tion of a permanent way by mutual consent. We think the testi-
mony, giving it the fullest possible effect, fails to establish a loca-
tion of the way pursuant to the terms of the grant, or otherwise.

The conclusion is thus reached that the trial court was right in
its findings and decision, and the judgment should therefore be af-
firmed, with costs. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. (dissenting). Although it may be concluded that
the plaintiff in the first instance made out a case establishing its
title in the strip of land in dispute, nevertheless, when we come
to consider the question of the weight of evidence, I think it clearly
preponderates in defendant's favor. The principal witness for the
plaintiff, and upon whose testimony mainly the finding for the plain-
tiff was based, was Mr. Mead, who at the time was 75 years of age,
and who gave his recollection of what occurred in 1854. He ad-
mitted that he knew nothing about either the southeast or the
northeast monuments, which in the deed located the boundary line
in dispute. He merely stated that prior to the making of the deed
he went with Mr. Patterson to a point 500 feet from the lake, and
thence measured off distances and marked trees to the east, and

believed this to be the line of the property, and made a charcoal pit near there, and that recently he has recognized the blazed trees and the remains of the pit on the boundary which the plaintiff claims. He further said that the deed was prepared in accordance with the survey in which he had taken the part mentioned, although the complaint alleged that such marking was done after the exe-cution of the deed, and amounted to a practical location; and the deed itself makes no mention whatever of any blazed trees along the way, nor of any distance of the line from the lake, both of which Mr. Mead regarded as very important. In the deed the description of the line is that it runs from "a stake and stones," "north, forty-four and three-quarters degrees east, two hundred and sixty-two chains and forty-five links, to a red cedar in the sawworks line, on a bluff of rocks." The only connection, therefore, between the deed before us and what Mr. Mead states he did, is that he believed his line, so measured from the lake and marked by trees, was the line of the deed. Further, in behalf of the plaintiff, we have the testi-mony of the surveyor Wilson, who was brought into the matter for the first time in 1893. He testified that he ran a line north from the Gore monument, and in the midst of his work concluded that he had erred, and changed his course 56 feet, and that this line did not strike "a heap of stones," described in the deed as forming the northwest corner of the tract, but, on the contrary, was 109 feet west of a heap of stones. This alone would seemingly account for over one-half of the difference in the location of the lines claimed by the parties. Mr. Wilson further testifies, however, that he meas-ured eastward from the line he had run, and from a point on it where there was no monument whatever, and at 47 chains came out, not to a "red cedar on a bluff of rocks," though there were cedars further east, but to a white oak tree, which was on the line testified to by Mr. Mead; thus, if anything, discrediting Mr. Mead's line as well as his own, since neither ended, as called for by the deed, in a red cedar on a bluff of rocks. Mr. Wilson did not say that there was any bluff of rocks at the place, and Mr. Washburn, his associate, when asked if the ground there was quite steep, re-plied, "Yes, sir, quite steep, where the oak tree was; it was a bluff;" and he also testified: "I recall the vicinity of the white oak. It is along the side of the hill." He was then asked, "Is it a stony place?" and answered, "More or less stony." This is the only testimony to show that the oak was "in a bluff of rocks." Mr. Wilson's further testimony is that over this mountainous country he ran a line east from the Gore monument 47 chains and 1 link, which was parallel to his other line, and which alone came out to Mr. Mead's line. And he says, however, that Mr. Mead's line (con-trary to the requirements of the deed) was not parallel to the line he had run north from the Gore monument, and that the latter line had ended in no northwest monument. His experiment seems of little importance. Even if its object was only to discredit the de-fendant's line here, distances and courses over such a country, at widely separated times, requiring needle variations by the different surveyors, is of little weight, particularly when the line claimed for

the boundary ends in a landmark other than that described in the
deed. The plaintiff's case was directed, not alone to disproving the
defendant's boundary, but to establishing its claimed line, and for
that purpose such testimony is insufficient. Mr. Wilson also says
that at the southerly end of Mr. Mead's line he found a heap of old
stones, which was nearly the right distance from a chestnut stake
which he found in Bear Swamp, and which was in a straight line
from this stake to another corner of Mr. Lorillard's property, though
whether or not it should have been he did not know.

This is all we have on the part of the plaintiff in support of the
boundary it claims. There is not one word of identification of the
southeast or of the northeast monument, and there is no northwest
monument to identify. Its southeast monument was an old heap
of stones, which was nearly the right distance from an unidentified
stake in a swamp. The northeast monument was neither located
on a "bluff of rocks" nor near a "cedar tree," nor was it the proper
distance from any northwest monument. It was on the side of
a hill, in a more or less stony place, at a white oak tree, and cedar
trees were "further east." It was 47 chains from a line which had
been started by plaintiff's surveyor north from the Gore monument,
and in progress was corrected 56 feet, and ended at no northwest
monument. All that can further be said is that Mr. Mead testified
that the boundary was 500 feet from the lake, and that the plain-
tiff's line is at such distance (though whether or not the shore line
had changed he did not know), and he also testified as to blazed
trees, etc., on that line.

That Mr. Mead's statement has been regarded as of great im-
portance appears from the opinion of Mr. Justice HATCH, where,
in speaking of the plaintiff's claimed line, he says:

"The true line should pass through or near certain marked trees. It should
run west of the Babcock Swamp, west of the old coal pit, and about 500 feet
west of the lake, if it be the line located by Mead and others. This line does
so pass. The line contended for by the defendant could not be made to
verify, as does the one claimed by the plaintiff, but ignores all the distin-
guishing marks except corner monuments. * * *"

The plaintiff's case rests almost entirely on Mr. Mead's testimony,
and, so far as it gives new lines, marks, and monuments differing
from the deed, the question arises, is it admissible? The deed
makes no mention of 500 feet from the lake, nor of any marked trees
along the way; and the rule is that where the terms of description
in a deed are clear, and no latent ambiguity is shown, extrinsic evi-
dence cannot be given to contradict, vary, or even explain the de-
scription. The rule is thus stated in Harris v. Oakley, 130 N. Y. 1,
28 N. E. 530:

"Where, in the description of premises in a deed, courses and distances
and monuments are given, the premises must be located according to the
deed, and all parol evidence of the declarations and acts of the parties of an
intended different location is inadmissible as contradicting or varying the
deed."

Therein it was said:

"The fence is not mentioned in the deed. Had it been, it would perhaps
have become a monument or object which would control the determination of

the question; for the rule is that courses and distances ordinarily must yield to natural or artificial monuments or objects."

And in Muldoon v. Deline, 135 N. Y. 150, 31 N. E. 1091, the court said:

"There is no ambiguity in the description contained in the plaintiff's deed. Every line can be surveyed on the ground just as given and the grantor had the land. When the description is applied to the land, no ambiguity is produced, and hence there is no room for parol evidence. It is true that the intent of the parties to the deed must control. But that intent must be ascertained from the language contained in the deed."

Here there was no ambiguity. The deed refers to the southeast corner as "a stake and stones," and says: "Thence north, forty-four and three-quarters degrees east, two hundred and sixty-two chains and forty-five links, to a red cedar in the sawworks line, on a bluff of rocks." To establish this line, all that was necessary was to identify the stake and stones at one end, and the red cedar on the bluff of rocks at the other, or to run the course given in the deed. The distance of that line from a place such as the lake, not mentioned in the deed, was hardly competent. Furthermore, all that Mr. Mead did preceded the giving of the deed, and in such a case the deed itself must be held to represent the final terms and boundaries as agreed upon. As said in Clark v. Wethey, 19 Wend. 320: "The maxim of the common law * * * declares that all oral agreements of the parties in respect to the subject-matter of the deed shall be merged in it, and such deed cannot be contradicted by parol." The relief asked by the complaint was a confirmation of a boundary line claimed to have been agreed upon after the delivery of the deed. Mr. Mead, however, says that the location, if any, preceded the giving of the deed, and no motion to amend the complaint was made.

Assuming that Mr. Mead's testimony was admissible, it will be seen upon what a slight basis the plaintiff's case rests. If, however, we deem such proof sufficient by itself to support a finding in favor of plaintiff's title to the land in dispute, I think that, when compared with the evidence given by the defendant, it is clearly outweighed. The defendant offered convincing testimony, identifying the landmarks of the deed as coincident with the boundaries it claims. The northwest monument is identified by J. S. Ford, who had been superintendent for defendant, and who said that Mr. Patterson, now deceased, who was manager for Mr. Lorillard, had pointed it out to him. And from this monument Mr. Garrison, in 1885, ran a line to the Gore monument, which came within three feet of the distance stated in the deed; thus confirming Mr. Ford's testimony. The southeast corner is identified by Mr. Slawson, who testified that Mr. Patterson had in 1856 showed it to him, and told him it was the southeast corner; and this when, as an adjoining owner, it was against Mr. Patterson's interest to do so if the boundary was further west. Mr. Gordon also testified that, in 1861, Mr. Patterson told him it was the southeast corner, and not to cut beyond it. The northeast corner is identified by Mr. Garrison, as the deed calls for, as "a red cedar in the sawworks line, on a bluff of rocks"; he having in 1885 run from the northwest monument 47 chains 26 links, and

found "a stone heap on a ridge of rocks in a clump of cedars," which was in line with, and at the right distance from, the identified southeast monument. For the plaintiff, Mr. Jones testified that while with a surveyor he helped build a monument there "ten or eleven years ago," which would be after 1885, when Mr. Garrison found it. The fact that Mr. Jones was at that point with a surveyor contributes to the defendant's claim that that was a recognized boundary landmark. Mr. J. S. Ford, moreover, testified that Mr. Patterson showed him the northeast corner, and defined it as "a heap of stones upon a ridge of rocks surrounded by cedars." Mr. Roone testified that at that place there was, and is now, a stone heap on a ridge of rocks, and an old cedar tree has been blown down there, and the stones date back as far as the deed. From this place he also ran a line to the northwest corner, and came within 35 links of the distance of the deed. Mr. Lehman also testified that he surveyed to the northeast corner in 1892, and the monument there was on a ledge of rocks in a clump of cedars, and no other monument was thereabouts, and that Mr. Patterson afterwards pointed out the northeast monument, and said it was the boundary corner. Lastly, we have, against the plaintiff's claim, the map which it had itself caused to be filed in the office of the county clerk, which has for its boundary the defendant's line, in accordance with which, as can be seen from inspection of the map, lots and roads of the Tuxedo Park Association have been plotted.

With such evidence opposed, I do not think it can be said that the plaintiff should have judgment establishing its title to the land claimed. The defendant's line had evidently been acquiesced in by the plaintiff and many others, and a natural conclusion from the testimony is that the plaintiff first started its dispute upon hearing the statement of Mr. Mead that the boundary line was 500 feet from the lake, and the discovery that the recognized boundary was not that distance. Opposed to Mr. Mead's statement, we have an array of evidence, including the silent testimony of the deed itself, which absolutely discredits it. And, so far as practical location is concerned, not only did the plaintiff fail in any such proof, but the defendant showed that the plaintiff had governed itself according to, and had caused a map to be filed showing, the boundary line claimed by the defendant.

For the reasons stated, I dissent from the conclusion reached by my associates.